Catherine Weiss
(cweiss@lowenstein.com)
Natalie J. Kraner
Craig Dashiell
Eric R. Suggs
Tracy Buffer
Claudia Lorenzo
LOWENSTEIN SANDLER
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500
Pro Bono Counsel to Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| W.A.O., H.H.M.C., N.L.J., and K.M.R.L., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services; KEVIN McALEENAN, Acting Secretary, U.S. Department of Homeland Security; ROBERT COWAN, Director, National Benefits Center, U.S. Citizenship and Immigration Services; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>Defendants. | Case No. CV<br><br><br><br><br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.     This class action challenges the federal government's recent refusal to provide humanitarian relief in the form of Special Immigrant Juvenile Status ("SIJS") to young people who were between 18 and 21 years old when they obtained child welfare findings from a state juvenile court, a necessary predicate to petitioning for SIJS.   Congress created SIJS to protect vulnerable immigrant children by allowing them to remain lawfully in the United States in loving and stable homes after one or more of their parents proved unwilling or unable to care for them.  The government's refusal to adjudicate SIJS petitions in accordance with 8 U.S.C. § 1101(a)(27)(J) (the "SIJS Statute") and regulations (8 C.F.R. § 204.11) punishes already traumatized juveniles.   Instead of granting them SIJS, the government has imposed a new requirement for eligibility, resulting in the delay and denial of scores of meritorious petitions and placing young people in jeopardy of deportation from the United States.

2.     The SIJS Statute delineates roles for the state courts and the federal agency in the SIJS process: first, in the context of a family law proceeding—for example, to place a child in custody, complete an adoption, or oversee decisions pertaining to foster children—the state courts make specified factual findings grounded in state child welfare laws ("SIJ Findings"); second, U.S. Citizenship and Immigration Services ("USCIS") adjudicates the SIJS petition, which must include the state court SIJ Findings, to determine whether the child qualifies for immigration relief.  8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)(3)-(6); *H.S.P. v. J.K.*, 223 N.J. 196, 200–01, 209–12 (2015).  Accordingly, USCIS relies on SIJ

Findings from state courts, which themselves determine whether they have the authority under state law to issue such orders. The SIJS Statute makes relief available to any juvenile who submits a SIJS petition to USCIS before turning 21 and extends authority to issue predicate orders to any state "juvenile court."

3.    Here, USCIS has acted outside its authority and usurped state authority by denying SIJS to juveniles who were between the ages of 18 and 21 when they received predicate orders from the Superior Court of New Jersey, Chancery Division, Family Part (the "Family Part"). Specifically, sometime in 2018, USCIS began imposing a new requirement for SIJS eligibility: that the Family Part have jurisdiction to order a juvenile to return to the custody of the parent. This new requirement has no basis in federal law. Moreover, USCIS has concluded that the Family Part lacks such jurisdiction with respect to juveniles who are over 18 years old. This conclusion directly contradicts the precedential decisions of the New Jersey Appellate Division interpreting state law. Based on its new policy, USCIS is delaying and denying the SIJS petitions of New Jersey petitioners who were between 18 and 21 years old when the Family Part issued their SIJ Findings. These denials represent a sharp break with past practice and violate the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 552, 553, 701–706.

4.    Federal district courts in California and New York have preliminarily or permanently enjoined this policy and pattern of denials as to juveniles in this age group in those states. *J.L. v. Cissna*, 341 F. Supp. 3d 1048 (N.D. Cal. 2018) (preliminary injunction), *appeal filed* (9th Cir. Dec. 24, 2018); *R.F.M. v. Nielsen*,

No. 18-CV-5068 (JGK), 2019 WL 1219425 (S.D.N.Y. Mar. 15, 2019) (granting summary judgment), ECF No. 129 (entering judgment) (S.D.N.Y. Apr. 8, 2019). In addition, juveniles in this age group in Washington State have filed a challenge to the delay and denial of their SIJS petitions under this policy. *Class Action Complaint for Injunctive and Declaratory Relief, Moreno Galvez v. Cissna*, No. 2:19-cv-00321 (W.D. Wash. Mar. 5, 2019), ECF No. 1.

5.    Plaintiffs W.A.O., H.H.M.C., N.L.J., and K.M.R.L., ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), bring this action to protect immigrant youth from the wrongful denial of their SIJS petitions and the irreparable harms that follow. These harms include the immediate threat of deportation, notwithstanding findings by the New Jersey Family Part in each and every case that repatriation is not in the juvenile's best interest. The Family Part's best-interest findings often rest on the absence of any fit caretaker in the juvenile's home country and sometimes also on the need to protect the juvenile from continuing exposure to violence there. In cases where the Family Part has vested custody in an adult caretaker, removal would also sever the juvenile's relationship with that caretaker, thereby separating the juvenile from what is often the first stable home he or she has ever known. Even short of these drastic and, in some cases, life-threatening consequences, the delay or denial of legal immigration status results in significant harms to the health and well-being of juveniles and their prospects to develop into self-sufficient adults.

6.    Plaintiffs seek declaratory and injunctive relief to stop USCIS from relying on an extra-statutory eligibility requirement for SIJS that violates federal

law and poses an immediate risk of irreparable harm to Plaintiffs and the class they represent.  Plaintiffs respectfully request that this Court compel the government to rescind the improper SIJS denials or revocations already issued, reopen these SIJS petitions, and enjoin any future denials or revocations of SIJS based on the federal agency's assertion that the New Jersey Family Part lacks authority to place juveniles between the ages of 18 and 21 in the custody of their parents.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.  This case arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537; the regulations implementing the INA; the APA, 5 U.S.C. §§ 552, 553, 701–706; and the Due Process Clause of the Fifth Amendment.

8.     This Court has additional remedial authority under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201–2202 (declaratory relief), 5 U.S.C. §§ 701–706 (APA), and Federal Rule of Civil Procedure 65 (injunctive relief).

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) because Defendants are officers or employees of the United States, or agencies thereof, acting in their official capacities; because a substantial part of the events or omissions giving rise to the claims occurred in this district; and because three of the four named Plaintiffs reside in this district, as do nearly all members of the Proposed Class.

## PARTIES

### A.    Plaintiffs

10.   W.A.O. is a 21-year-old from El Salvador who was abandoned by his father at birth and whose father has since died.  W.A.O's mother was a victim of domestic violence and eventually migrated to the United States.  Living without parental protection in El Salvador, W.A.O. was harassed and threatened by local gangs.  He came to the United States with his younger siblings in January 2014.  On December 5, 2017, the Superior Court of New Jersey, Chancery Division, Family Part entered a revised, final order placing him in the care and custody of his mother, E.P.O., and entering SIJ Findings on his behalf.  In December 2016, W.A.O. submitted a SIJS petition to USCIS (based on an earlier, and subsequently updated, version of the Family Part Order).   Approximately 21 months later, in September 2018, USCIS denied his application based on its unlawful requirement.  W.A.O.'s younger siblings applied at the same time he did, based on the same family history, but they were granted SIJS.

11.   H.H.M.C. is a 20-year-old from Honduras who was abandoned and neglected by his father since his birth.  His mother migrated to the United States when he was three years old.  Living without parental protection in Honduras, H.H.M.C. was harassed and threatened by local gangs.  He came to the United States in March 2014.  On May 30, 2017, the Superior Court of New Jersey, Chancery Division, Family Part placed him in the care and custody of his mother, O.C., and stepfather, R.P., and entered SIJ Findings on his behalf.  In June 2017,

H.H.M.C. submitted a SIJS application.   Approximately 19 months later, in January 2019, USCIS denied his application based on its unlawful requirement.

12.   N.L.J. is a 21-year-old from Guatemala who was abused by his violent, alcoholic father and neglected and abandoned by his alcoholic mother throughout his childhood.   After suffering repeated assaults by local gang members, N.L.J. migrated to the United States in May 2014.   On February 16, 2017, the Superior Court of New Jersey, Chancery Division, Family Part placed him in the care and custody of his older sister, A.L.J., and entered SIJ Findings on his behalf.   In July 2017, N.L.J. submitted a SIJS application to USCIS. Approximately 14 months later, USCIS sent him a Notice of Intent to Deny ("NOID") based on its unlawful requirement.

13.   K.M.R.L. is a 20-year-old from Guatemala who was neglected first by his alcoholic father throughout his childhood and then by his overwhelmed and impoverished mother after his father's death.   K.M.R.L. spent four years, between the ages of 13 and 17, working 9-18-hour shifts in a factory and on various farms before migrating to the United States in November 2015.   On May 22, 2017, the Superior Court of New Jersey, Chancery Division, Family Part placed him in the care and custody of his older brother, J.F.R.L., and entered SIJ Findings on his behalf.   In June 2017, K.M.R.L. submitted a SIJS application to USCIS.   Approximately 19 months later, in January 2019, USCIS sent him a NOID based on its unlawful requirement.

### B.    Defendants

14.    Defendant Lee Francis Cissna is the Director of USCIS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  In this capacity, he oversees the adjudication of immigration benefits and establishes and implements governing policies.  6 U.S.C. § 271(a)(3), (b).  He has ultimate responsibility for the adjudication of SIJS applications under the immigration laws, including the SIJS petitions submitted by Plaintiffs.  Defendant Cissna is sued in his official capacity.

15.    Defendant Kevin McAleenan is the Acting Secretary of the DHS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  In this capacity, he is responsible for the administration of the INA and for overseeing, directing, and supervising all DHS component agencies, including USCIS.  Defendant McAleenan supervises Defendant Cissna.  Defendant McAleenan is sued in his official capacity.

16.    Defendant Robert M. Cowan is the Director of the USCIS National Benefits Center, which directly adjudicates SIJS applications, including those of Plaintiffs and members of the Proposed Class.  Defendant Cowan is sued in his official capacity.

17.    Defendant DHS is an executive agency of the United States and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  Congress had vested responsibility in the Secretary of Homeland Security to determine whether or not to grant SIJS petitions, 8 U.S.C. § 1101(a)(27)(J)(iii), and DHS is the department within which Defendant USCIS adjudicates SIJS petitions.  DHS operates within this district, with headquarters in Washington, D.C.

18.    Defendant USCIS is an executive agency of the United States and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  USCIS reviews and adjudicates SIJS petitions.  6 U.S.C. § 271(b).  USCIS operates within this district, with headquarters in Washington, D.C.

## BACKGROUND

I.    **THE SIJS STATUTE GRANTS HUMANITARIAN RELIEF TO VULNERABLE IMMIGRANT CHILDREN UNDER THE AGE OF 21 WHO HAVE BEEN PLACED IN THE CUSTODY OF AN INDIVIDUAL OR AGENCY APPOINTED BY A STATE JUVENILE COURT.**

   A.    **The History and Expansion of the SIJS Statute and the Promulgation of the Regulations**

19.    In 1990, Congress created Special Immigrant Juvenile Status to protect immigrant children in long-term foster care and provide them a pathway to permanent residence.  Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).  The statute originally defined a special immigrant juvenile as:

> an immigrant (i) who has been declared a dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence . . . .

*Id.*

20.    The statute did not specify the age of eligibility for SIJS, but the Immigration and Naturalization Service (the predecessor agency to DHS) adopted the definition of "child" in the INA, meaning "an unmarried person under twenty-

one years of age." 8 U.S.C. § 1101(b)(1).  Thus the SIJS regulations, promulgated in 1993 and unchanged in all relevant respects since then, make SIJS available to children so defined.  58 Fed. Reg. 42843, 42850 (August 12, 1993) (codified at 8 C.F.R. § 204.11(c)) ("An alien is eligible for classification as a special immigrant under section 101(a)(27)(J) of the Act if the alien: (1) Is under twenty-one years of age; (2) Is unmarried . . . .").[1]

21.    At the time the regulations were adopted, the agency explained its decision to cut off eligibility at 21, not only by reference to the statutory definition of "child" in the INA, but also as a means of assuring consistency among the states.  In promulgating the final regulation, the agency amended its initial interim regulation, which had made a young immigrant eligible if he or she was "a juvenile under the law of the state in which the juvenile court upon which the alien has been declared dependent is located."  56 Fed. Reg. 23207, 23208 (May 21, 1991).  Commenters objected to this language, pointing out that "definitions of the terms 'juvenile,' 'minor,' and 'child' vary from state to state."  58 Fed. Reg. 42843, 42846 (Aug. 12, 1993).  The agency responded by setting the cut-off at 21:

> [I]n order to minimize confusion caused by dissimilar state laws, the Service has removed the requirement that the beneficiary be a juvenile under state law and replaced it with a requirement the beneficiary be under twenty-one years of age.  The new requirement establishes a consistent countrywide definition of the age at which an alien will no longer be eligible for special immigrant juvenile status.

---

[1] The implementing regulations were updated in 2009, but only to remove references to the legacy Immigration and Naturalization Service, which was dissolved in 2002.  *See* 74 Fed. Reg. 26933, 26937 (June 5, 2009).

*Id.*  The agency explained further: "The revised standard allows students and other young persons who continue to be dependent upon the juvenile court after reaching the age of eighteen to qualify for special immigrant juvenile status."  *Id.*

22.    Since the SIJS Statute's original enactment, Congress has amended it three times.  In 1994, Congress expanded the definition of a "special immigrant juvenile" to include individuals who had been "legally committed to, or placed under the custody of, an agency or department of a State."   Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 219(a), 108 Stat. 4305 (1994).  This amendment increased the class of children eligible under the statute because children placed in the custody of the state include, for example, those committed to juvenile detention centers or other custodial arrangements, and not only those placed in foster care.

23.    Congress again amended the Act in 1997 in response to a perception that some undocumented parents might be relinquishing their parental rights to make their children eligible for SIJS.  Ruth Ellen Wasem, *Special Immigrant Juveniles: In Brief*, Cong. Res. Serv., Aug. 29, 2014, at 3.  The amendment changed the definition of a "special immigrant juvenile" to include only those "deemed eligible . . . for long-term foster care due to abuse, neglect, or abandonment."  Dep'ts of Commerce, Justice, and State, the Judiciary, and Related Agencies Approps. Act, 1998, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2460 (1997).

-11-

24.    In 2008, Congress again significantly expanded SIJS eligibility.  The Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") was passed with broad bipartisan support and removed the requirement that the child be eligible for foster care, replacing it with the more expansive requirement that a state juvenile court find that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008) (codified at 8 U.S.C. § 1101(a)(27)(J)(i)).[2]  In addition, consistent with the INA's definition of a "child," the amendments under the TVPRA provided age-out protections so that the SIJS classification would not be denied to anyone on the basis of age so long as the juvenile was under 21 at the time of filing the SIJS petition (even if he or she turned 21 while the SIJS petition was pending).  *Id.*, 122 Stat. at 5080 (codified at 8 U.S.C. § 1232(d)(6)).  By both eliminating the requirement that a child be found eligible for long-term foster care in order to receive SIJS and creating age-out protections, Congress confirmed that SIJ Findings can be made in a wide range of state court proceedings and that children up to the age of 21 may apply for SIJS.  In addition, the TVPRA significantly narrowed the authority of federal officials to grant or withhold consent to various steps in the SIJS process.  *See* Mem. from Donald Neufeld, Acting Associate Dir., Domestic Operations, USCIS, to Field Leadership 3–4 (Mar. 24, 2009) (A-4–5).[3]

---

[2] The regulations have not been updated to reflect this change. *See* 8 C.F.R. § 204.11.

[3] Pages in the Appendix are shown as (A-__).

25.    Under the current SIJS Statute and regulations, a state "juvenile court" must make the following findings:

i.      The petitioner is under 21 years of age;

ii.     The petitioner is unmarried;

iii.    The petitioner is dependent on the court or to be placed in the custody of, or legally committed to, a state agency or individual appointed by the court;

iv.    The petitioner cannot be reunified with one or both parents due to abuse, neglect, abandonment, or a similar basis found under state law; and

v.     It is not in the petitioner's best interest to be returned to his or her country of nationality or last habitual residence.

8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)(1)-(2); *see also* 8 U.S.C. §§ 1101(b)(1), 1232(d)(6).

26.    A SIJS grantee is eligible to become a lawful permanent resident without regard to how he or she arrived in the United States.   The bars to permanent residence based on unlawful entry, which apply to most other categories of petitioners, are statutorily inapplicable to children granted SIJS.   8 U.S.C. § 1255(a), (h).

**B.    USCIS's Deference to State Courts**

27.    Congress reserved a critical role for state courts in the SIJS framework because state courts are expert in making child welfare determinations, including whether a child has been abused, neglected, or abandoned, and what is in his or her best interest.   8 U.S.C. § 1101(a)(27)(J)(i)-(ii).   The SIJS Statute

therefore explicitly enlists the state courts to make determinations about the child's welfare, custody, and best interest. *Id.*

28.   The SIJS Statute also confers authority on the Secretary of Homeland Security to consent to the SIJ classification. 8 U.S.C. § 1101(a)(27)(J)(iii). The consent function has been delegated to USCIS, 6 U.S.C. § 271(b), which exercises its authority to review the juvenile court order for the purpose of determining whether the SIJS request is "bona fide," i.e., whether the juvenile petitioned the state court "to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit," USCIS Policy Manual, Vol. 6, Part J, ch. 2.D.5 (A-16). "USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law." *Id.* (A-16). Still, "[i]n order to exercise the statutorily mandated DHS consent function, USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as a SIJ." *Id.* (A-16). Thus, "USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings." *Id.* (A-16). If the state court order itself does not state a factual basis for its findings, USCIS may rely on related evidence, including "supporting documents submitted to the juvenile court." *Id.* at ch. 3.A.3 (A-22).

29.   USCIS itself recognizes that it must defer to state courts' interpretation of their own law: "There is nothing in USCIS guidance that should

be construed as instructing juvenile courts on how to apply their own state law." *Id.* at ch. 2.D.4 (A-15).

## II.    THE NEW JERSEY FAMILY PART IS A "JUVENILE COURT" WITH JURISDICTION TO ISSUE SIJ FINDINGS FOR JUVENILES BETWEEN 18 AND 21 YEARS OF AGE.

### A.    The New Jersey Family Part Is a "Juvenile Court" Within the Meaning of the SIJS Regulations.

30.    The SIJS regulations define "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).

31.    The New Jersey Constitution provides that "[t]he Superior Court shall be divided into an Appellate Division, a Law Division, and a Chancery Division, which shall include a family part.  Each division shall . . . hear such causes, as may be provided by rules of the Supreme Court."  N.J. Const. art. VI, § 3, ¶ 3.  The Court Rules vest in the Family Part jurisdiction to hear "[a]ll actions in which the principal claim is unique to and arises out of a family or family-type relationship." N.J. Ct. R. 5:1-2(a).  Such actions include (among others) those to determine the custody of a child, *see generally* N.J. Ct. R. 5:8; establish kinship legal guardianship, *see generally* N.J. Ct. R. 5:9A; order an adoption, *see generally* N.J. Ct. R. 5:10; place a child with the New Jersey Division of Child Protection and Permanency, *see generally* N.J. Ct. R. 5:12; and adjudicate juvenile delinquency, *see generally* N.J. Ct. Rs. 5:19 to 5:25.

32.    New Jersey statutes confirm the jurisdiction of the Superior Court in matters involving child custody and visitation; termination of parental rights;

kinship legal guardianship; adoption; adjudication of abuse, neglect, abandonment, and similar forms of mistreatment of children; child support; juvenile delinquency; and a wide range of similar family matters. *See generally*, N.J. Stat. Ann. 9:1-1 to 9:3A-7.4, 2A:4A-23 to -48, 30:4C-1.1 to -92.

33.     Moreover, the Appellate Division of the Superior Court has explicitly held that, for the purpose of SIJ Findings, the answer to the general question whether the Family Part has "jurisdiction under state law to make judicial determinations about the custody and care of juveniles," in accordance with 8 C.F.R. § 204.11(a), "should always be 'yes.'" *A.E.C. v. P.S.C.*, 453 N.J. Super. 19, 30 (App. Div. 2018). "That question," the court explained, "addresses the Family Part's general jurisdiction, not its specific jurisdiction to grant relief in this case." *Id.* (citing *H.S.P.*, 223 N.J. at 210). And the Family Part has such general jurisdiction.

**B.     The New Jersey Family Part Has Jurisdiction to Make Custody and Care Determinations for Unemancipated Juveniles Between the Ages of 18 and 21.**

34.     The jurisdiction of the Family Part extends to determinations about the care and custody of juveniles between the ages of 18 and 21 in certain circumstances.

35.     The New Jersey Appellate Division has held that, "pursuant to N.J.S.A. 9:17B-3, the Family Part has jurisdiction to grant a parent custody of an unemancipated child who is over eighteen, but under twenty-one, and to issue a declaratory ruling that the child is dependent on the parent and is not emancipated." *A.E.C.*, 453 N.J. Super. at 21. The court noted "ample precedent

for declaring children over the age of eighteen to be unemancipated when they are still completing their education, are economically dependent on their parents, and remain within the parental 'sphere of influence and responsibility.'" *Id.* at 28–29 (quoting *Filippone v. Lee*, 304 N.J. Super. 301, 308 (App. Div. 1997), and citing cases).  Furthermore, in a case involving the care or custody of a juvenile between the ages of 18 and 21, "either a declaration of unemancipation or a custody order would justify the court in noting, for purposes of an SIJ finding, that the child is 'dependent' on the court. *See* 8 C.F.R. § 204.11(c)." *Id.* at 29.

36.    New Jersey family law sets the age of majority in general at 18.  N.J. Stat. Ann. § 9:17B-3.  The statute contains several exceptions, however.  One of these is "with respect to the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age, or to require a change in action heretofore taken by a court with respect to a person under 21 years of age." *Id.*  The Appellate Division has explained that this exception reflects "the Legislature's intent to protect young adults, and has been invoked to provide benefits to older juveniles where the literal terms of other statutes might not protect them." *A.E.C.*, 453 N.J. Super. at 26.

37.    In *A.E.C.*, the Appellate Division instructed that the Family Part may declare a juvenile in this age group to be unemancipated and/or place that juvenile in custody "where that disposition is in the child's best interest and both the child and parent consent." *Id.* at 29.  The Appellate Division then reversed the Family Part's denial of a custody order in the case before it based on findings that a custody order was in the juvenile's best interest.  *Id.* ("J.S.E. is clearly not

emancipated, still attends a special "last-chance" high school, cannot provide for himself economically, has no one else on whom he can depend for financial support, and would face dire circumstances if he were separated from his mother or if she did not financially support him."). In exercising its original jurisdiction to direct the Family Part to enter a custody order for J.S.E., the Appellate Division made no mention of his consent. *Id.* at 29–30.

## III. USCIS IS IMPERMISSIBLY DELAYING AND DENYING SIJS PETITIONS BASED ON THE IMPOSITION OF REQUIREMENTS THAT ARE CONTRARY TO THE SIJS STATUTE AND VALID PORTIONS OF THE SIJS REGULATIONS.

### A. USCIS Unlawfully Imposed New SIJS Eligibility Requirements.

38.    Upon information and belief, before 2018, USCIS had not denied a single SIJS petition on the ground that a juvenile court of any state lacked authority to reunify a juvenile between the ages of 18 and 21 with his or her parent.

39.    Upon information and belief, in late 2016, USCIS consolidated SIJS adjudications, which had previously been handled by field offices throughout the country, in the USCIS National Benefits Center in Missouri. USCIS, *USCIS to Centralize Processing of Special Immigrant Juvenile Cases*, Nov. 1, 2016, https://www.uscis.gov/news/alerts/uscis-centralize-processing-special-immigrant-juvenile-cases.

40.    Upon information and belief, sometime thereafter, the National Benefits Center requested guidance from the USCIS Office of Chief Counsel ("OCC") regarding the authority of the state juvenile courts to make SIJ Findings in connection with proceedings to place a juvenile between the ages of 18 and 21

in the care or custody of a responsible adult.  Upon information and belief, while awaiting OCC guidance, USCIS stopped adjudicating petitions based on state court orders entered after the petitioner's 18th birthday ("18+ Juvenile Court Orders"). This delay left these vulnerable juveniles in limbo and led to frequent violations of the statute setting a 180-day deadline for the adjudication of SIJS applications. TVPRA, 8 U.S.C. § 1232(d)(2).  USCIS has not timely adjudicated any of Plaintiffs' SIJS petitions.  *See supra* ¶¶ 10-13.

41.    In February 2018, the OCC issued the requested guidance to USCIS ("OCC Guidance") (A-38–39).  The OCC Guidance included this response to USCIS's question about the jurisdiction of state courts to enter orders for juveniles over 18: "[I]n order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have competent jurisdiction *to determine both whether a parent could regain custody and to order reunification, if warranted*."  *Id.* (emphasis added) (A-38).  The OCC went on to state:

> Where a court loses the capacity to order reunification with a parent at age 18, they [sic] necessarily cannot make a juridical determination that reunification is not viable.  Accordingly, a state court order finding that parental reunification is not viable will not be considered valid for the purpose of establishing SIJ eligibility if the evidence submitted by the petitioner does not establish the courts' jurisdiction under state law to place the child under the custody of the allegedly unfit parent.

*Id.* (A-39).

42.    In support of its rationale, the OCC cited portions of the SIJS regulations pertaining to a child's eligibility for long-term foster care.  *Id.* (citing 8 C.F.R. § 204.11(a), (d)(2)(i)-(ii)) (A-38).  These provisions have since been

overridden by statute.  TVPRA, Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008) (codified at 8 U.S.C. § 1101(a)(27)(J)(i)) (replacing statutory requirement of eligibility for long-term foster care with requirement that a juvenile court find that the juvenile cannot be safely reunified with one or both parents).  To the extent that the OCC Guidance is based on regulations since superseded by statute, such Guidance has no legal merit.

43.    The OCC Guidance was not made public, even though, upon information and belief, USCIS immediately began to rely on the Guidance to issue Requests for Evidence ("RFEs"), Notices of Intent to Deny ("NOIDs"), and denials of SIJS petitions based on 18+ Juvenile Court Orders.

44.    On April 18, 2018, the *New York Times* ran an article reflecting that it had contacted USCIS to investigate the reasons for the change in how applications based on 18+ Juvenile Court Orders were being processed.  USCIS spokesperson Jonathan Withington denied that any policy change had occurred: "U.S.C.I.S. has not issued any new guidance or policy directives regarding the adjudication of S.I.J. petitions.  We remain committed to adjudicating each petition individually based on the merits of the case and safeguarding the integrity of our lawful immigration system."  Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. Times, April 18, 2018 (quoting Jonathan Withington) (A-44).

45.    Just six days later, in response to further inquiries prompted by the *New York Times* article, Mr. Withington changed his position and explained that

the OCC Guidance had prompted the anticipated and actual denials of SIJS petitions based on 18+ Juvenile Court Orders.

In November 2016, USCIS decided to centralize adjudication of all Special Immigrant Juvenile (SIJ) cases to the National Benefits Center (NBC) in Missouri to more consistently and efficiently process these cases. By late summer 2017, the USCIS NBC asked for legal guidance that affected pending cases filed by individuals over 18 at the time the New York state court order was issued while the NBC sought legal clarification from the USCIS Office of Chief Counsel. The agency began holding Texas cases for the same reason in fall 2017. In February 2018, OCC provided legal guidance on the statutory requirements for "reunification with one or both parents" for the purposes of establishing eligibility for the SIJ classification.

In February, in light of OCC's legal guidance, the NBC began to review the approximately 5,500 pending cases, resulting in the issuance of Notices of Intent to Deny for approximately 130 cases in that population. Pending cases that had previously been issued Requests for Evidence or Notices of Intent to Deny were issued final decisions. A total of approximately 260 have been denied.

For purposes of establishing eligibility for SIJ, the statute requires that a state court have the authority to return a child to the custody of their parent in order for that court to find that reunification is not viable. Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority (as determined by state and in most instances that is age 18), those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility.

Statement of USCIS Spokesperson Jonathan Withington (April 24, 2018) ("Withington Statement"), appended to Ted Hesson, *USCIS Explains Juvenile Visa Denials,* Politico, Apr. 25, 2018 (A-57). The final paragraph constitutes the only public statement the agency has made to explain the denials of SIJS petitions based on 18+ Juvenile Court Orders.

46.     In the wake of the OCC Guidance, USCIS amended its Consolidated Handbook of Adjudication Procedures ("CHAP"). The CHAP is an internal manual for USCIS personnel who adjudicate petitions. As of April 30, 2018, it included a long discourse, prepared by the OCC, in answer to this question: "Can you clarify USCIS's interpretation of reunification with one or both parents for purposes of establishing eligibility for SIJ Classification, in particular where the petitioner is over 18 at the time the order is issued?" USCIS, CHAP, Vol. 6, Part D, ch. 2.A.1, *Petitions for Special Immigrant Juveniles (SIJs)* (April 30, 2018) (A-60). The crux of the answer is drawn nearly verbatim from the OCC Guidance: "[I]n order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have the power and authority to determine both whether a parent could regain custody and to order reunification, if warranted." *Id.* (A-60).

47.     Thereafter, USCIS began to issue denials to juveniles in New Jersey who had submitted SIJS applications in reliance on Family Part orders issued after they had turned 18. Declaration of Randi Mandelbaum ¶¶ 18–26 (Apr. 24, 2019) (A-169–72); Declaration of Maria Odom ¶¶ 14–17 (Apr. 18, 2019) (A-181). These denials reiterated the explanations presented in the OCC Guidance and the

Withington Statement.   For example, USCIS denied Plaintiff W.A.O.'s SIJS petition on September 7, 2018, stating as follows:

> A juvenile court generally loses jurisdiction over you once you reach the age of majority.  Because you reached the age of majority on or before the date of the court order you submitted, it does not establish that the court issuing the order had the authority to determine whether your parent should regain or lose custody of you. Therefore, the juvenile court order is not valid for the purpose of establishing your eligibility for SIJ classification.

> While you have presented evidence that a court has granted legal and physical custody of you, the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody.

USCIS, Decision Denying I-360 Petition of W.A.O. at 3 (Sept. 7, 2018) (citations omitted) (A-108).   Likewise, USCIS issued a NOID to Plaintiff K.M.R.L. explaining its intent to deny his SIJS petition on the ground that "the evidence you submitted does not establish that the state court had jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody."  USCIS, Notice of Intent to Deny I-360 Petition of K.M.R.L. at 2 (Jan. 8, 2019) (A-158). Other named Plaintiffs and members of the Proposed Class have received, or will receive, similar RFEs, NOIDs, denials, and revocations of their SIJS petitions.

48.   The denials in New Jersey mirror those in other states, including California, New York, and Washington, where USCIS has articulated the same basis for refusing to grant SIJS to juveniles who rely on 18+ Juvenile Court Orders. *See J.L.*, 341 F. Supp. 3d 1048 (preliminarily enjoining enforcement of policy of

denying SIJS applications to such juveniles in California); *R.F.M.*, 2019 WL 1219425 (granting summary judgment), No. 18-CV-5068, ECF No. 129 (entering judgment); *Moreno Galvez v. Cissna*, No. 2:19-cv-00321 (challenging implementation of this policy in Washington State).

**B.    USCIS Contravenes Federal Law by Categorically Disqualifying from SIJS Those Juveniles in New Jersey Who Petition Based on Family Part Orders Entered Between Their 18th and 21st Birthdays.**

49.    Defendants' denial or intent to deny SIJS to Plaintiffs on the grounds that the state court lacks authority to reunify Plaintiffs with their parents violates the SIJS Statute because it imposes a new eligibility requirement on SIJS petitions that does not exist anywhere in the law.   Defendants' actions are arbitrary, capricious, and contrary to the plain text of the relevant statutes, regulations, and agency guidance.

50.    Section 101(a)(27)(J)(i) of the INA contains no suggestion that a state juvenile court lacks the legal authority to make findings about the non-viability of a juvenile's reunification with a parent unless the court has jurisdiction to order such reunification.   While the Statute does require juvenile court findings that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law," *id.*, nothing in this language states or logically implies that the court must have the authority to order reunification if it is viable.   A state court order finding that reunification with both parents was viable—because neither had abused, neglected, abandoned, or otherwise mistreated the juvenile—would be insufficient to support a SIJS petition

because the statutory criteria would not be met.  But nowhere does the SIJS Statute suggest that a juvenile court must have the power to order reunification.

51.    The SIJS Statute also includes requirements that a juvenile be "declared dependent on a juvenile court . . . or . . . legally committed to, or placed under the custody of, an agency . . . or an individual or entity appointed by a State or juvenile court."  *Id.*  Thus, if a state court order failed to place the juvenile in custody or declare the juvenile dependent on the court, the order would be insufficient to support a SIJS petition for failure to meet the statutory criteria.  But a court order finding that an 18-21-year-old is unemancipated, and placing that juvenile in custody or declaring him or her dependent on the court, is perfectly sound under the SIJS Statute and fulfills its criteria so long as state law confers jurisdiction on the court to enter such an order.

52.    The valid portions of the SIJS regulations also undermine the validity of USCIS's policy of denying SIJS to youth who obtained Family Part orders after they turned 18.  The regulatory definition of a juvenile court as one "having *jurisdiction under State law* to make judicial determinations about the custody and care of juveniles" underscores that the assertion of jurisdiction depends on state law.  8 C.F.R. § 204.11(a) (emphasis added).  Thus, where state law establishes jurisdiction in the court to enter a custody order for an unemancipated juvenile between the ages of 18 and 21, with or without the juvenile's consent, USCIS has no business gainsaying that exercise of jurisdiction.

53.    USCIS's policy of disqualifying from SIJS eligibility those juveniles in New Jersey who apply based on 18+ Family Part Orders is also inconsistent

with the plain language of the relevant statutes and regulations regarding age limits. The INA defines a "child" as "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). When the SIJS regulations were adopted in 1993, the agency incorporated this same rule, 58 Fed. Reg. 42843, 42850 (August 12, 1993) (codified at 8 C.F.R. § 204.11(c)(1), (2)), explicitly noting that the cut-off at 21 "conforms with the definition of 'child' contained in section 101(b)(1) of the Act," *id.* at 42846. The agency further explained its decision to set the cut-off at 21 as a way of establishing "a consistent countrywide definition" and allowing "students and other young persons who continue to be dependent upon the juvenile court after reaching the age of eighteen to qualify for [SIJS]." *Id.* USCIS's current turnabout policy of denying SIJS to juveniles in New Jersey who obtained predicate orders when they were older than 18 undercuts the agency's stated goals of qualifying young people in this age group and "minimiz[ing] confusion caused by dissimilar state laws." *Id.*

54.    The TVPRA reinforced the importance of ensuring that older juveniles would not be unfairly disqualified from SIJS. That statute includes age-out protections so that SIJS will not be denied to juveniles on the basis of age so long as they are under 21 on the date they file the petition (even if they turn 21 while the petition is pending). 8 U.S.C. § 1232(d)(6). Through this provision, Congress reaffirmed its intent that juveniles would continue to qualify for SIJS until the age of 21. Yet USCIS is relying on the OCC Guidance, unmoored to any provision of the law or regulations, to disqualify juveniles who rely on 18+ Family Part Orders.

**C.    USCIS Fails to Defer to State Courts' Child Welfare Determinations As Required by Federal Law.**

55.    In denying SIJS to Plaintiffs, USCIS fails to defer to the state court's findings as mandated by the SIJS Statute.  The SIJS Statute specifically reserves for the juvenile court the duty to make the required custody, dependency, or legal commitment determination; to find that the child cannot reunify with one or both parents due to abuse, neglect, abandonment, or a similar basis under state law; and to make the best-interest determination.  8 U.S.C. § 1101(a)(27)(J)(i), (ii).  USCIS must defer to the state court's expertise in child welfare matters and to the state court's interpretation of its own law regarding its own jurisdiction.  USCIS Policy Manual, Vol. 6, Part J, ch. 3.A.2 ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on *how to apply their own state law. Juvenile courts should follow their state laws on issues such as when to exercise their authority*, evidentiary standards, and due process.") (emphasis added) (A-22).

56.    Defendants have nevertheless refused to defer to the state court and have instead challenged the Family Part's exercise of jurisdiction over Plaintiffs and other juveniles like them, as well as the Family Part's finding that reunification is not viable under New Jersey law.  This refusal is based on Defendants' newly established and unlawful requirement that the juvenile court have the "power and authority to determine both whether a parent could regain custody and to order reunification, if warranted."  CHAP, Vol. 6, Part D, ch. A.1 (A-60).

57.    The New Jersey Family Part has such "power and authority," *id.*, with regard to unemancipated juveniles between the ages of 18 and 21.   In some

circumstances, such a juvenile's consent to a custodial placement may be necessary or desirable under New Jersey law. *See* N.J. Stat. Ann. § 9:6-8.54(c) (requiring juvenile's consent for foster placements after age 18); *A.E.C.*, 453 N.J. Super. at 29 (suggesting that consent is necessary to place an unemancipated juvenile older than 18 in the custody of an individual caretaker). Insofar as the juvenile's consent is required, however, there is no doubt about the Family Part's authority to make a custodial placement with such consent.

58.    Thus, even if there were any basis in federal law for the requirement USCIS now imposes that a juvenile court have the power to order a juvenile to reunify with a parent—which there is not—USCIS is obligated to defer to the determination of the New Jersey courts that they possess this authority with regard to unemancipated juveniles between the ages of 18 and 21, so long as they have the consent of the juvenile where necessary. There is no support in federal or New Jersey law for USCIS's apparent position that a requirement of juvenile consent vitiates the Family Part's jurisdiction. *See*, *e.g.*, *In re J-A-M-R-*, 2018 WL 6617332, *6 (USCIS Admin. Appeals Office Nov. 28, 2018) ("[A] custody determination by the [over 18-year-old] Petitioner's consent does not show that the family court could have ordered the Petitioner's reunification with his parents had the family court found that to be the appropriate remedy.").

## IRREPARABLE HARM

59.    USCIS's arbitrary imposition of a new SIJS requirement and unlawful refusal to defer to state court SIJ Findings doom Plaintiffs' meritorious SIJS applications, render Plaintiffs vulnerable to deportations that a state court judge has

already determined to be against their best interests, jeopardize the stability they have been striving for in the care of their custodians, undermine their health, and compromise their prospects for education and employment. Separately and together, these detriments constitute irreparable harm.

60. Because he is already in removal proceedings, W.A.O. faces an imminent risk of deportation following USICS's denial of his SIJS petition. Deportation to El Salvador would mean re-separation from his mother, who left their home country six years before he did. The Family Part reunified them, and W.A.O. cannot bear the idea of being parted from his mother again. Both he and his mother endured beatings at the hands of her intimate partners, and now W.A.O. feels safe with her for the first time. He has no one in El Salvador to look out for him. He would be left to fend for himself.

61. The prospect of removal to El Salvador is especially unnerving to W.A.O. because he has already faced severe gang threats and harassment there. After he had resisted gang recruitment for a couple of years, the gang threatened his life and the lives of his family members. He became too afraid even to leave the house because of the possibility that he would run into members of the gang. When his uncle confronted them on W.A.O.'s behalf, gang members shot him in the shoulder as he fled behind a car. Two of W.A.O.'s friends from home have been killed by the gang since he arrived in the United States.

62. W.A.O. desperately hopes that he can stay in the United States with his mother and siblings. He is enthusiastic about learning to speak English. He will soon start taking English classes at Union County College. He aspires to be

an engineer or police officer, but he has had to put those dreams on hold because of the wrongful denial of his SIJS application.  In addition, he does not have assistance from the government to afford adequate health care.  W.A.O. and his mother have had to pay out of pocket when W.A.O. has needed to see a doctor.  Had he been granted SIJS, he would have been eligible for government-subsidized health care.

63.    H.H.M.C. is also in removal proceedings and fears that, unless USCIS overturns his SIJS denial, he will not be able to avoid deportation.  He grew up in Ceiba, Honduras, mainly with his grandparents.  His mother came to the United States when he was three years old, and his father abandoned him at birth and failed to support him.  When H.H.M.C. was 13 years old, a local gang murdered his uncle and then began to threaten and harass him, culminating in an armed robbery of his home on Christmas Day in 2013.  He told his father about the danger he faced, but his father did nothing.  H.H.M.C. fled Honduras soon afterwards.  His grandfather had passed away by then, and his grandmother had grown too old to care for him, leaving him without any protection.

64.    In the United States, H.H.M.C. has the support of his mother and stepfather, in whose custody the Family Part has placed him.  H.H.M.C. feels significantly safer in the stable home he has found here than in Honduras.  He has many goals he would like to achieve.  In particular, he wants to learn to work with airplanes, which he has always loved, but he understands that he needs legal status to pursue this dream.  In the meantime, he is working in construction and using his earnings to support his family both here and in Honduras.

65.    N.L.J. is currently in removal proceedings and, unless USCIS changes the position stated in the NOID it issued and grants him SIJS, he faces imminent deportation to Guatemala.  Both of his parents are alcoholics, and his father is a violent one.  When he was younger, his mother would lie drunk in the street, and his father would hit and kick N.L.J. and his siblings when he drank.  His father would often drag N.L.J. to bars with him, and gang members frequently approached them in the street as they wandered through town.  The gang often beat them up.  The penultimate assault resulted in injuries to N.L.J.'s arm and a blow that knocked him unconscious.  His father was also seriously wounded.  After yet another attack, N.L.J. was afraid to leave the house, and his parents were too drunk to help.  He fled soon afterwards.

66.    The Family Part placed N.L.J. in the custody of his older sister in Morristown.  He feels safe with his sister and her husband; they care for him and protect him in ways his parents never did.  He was an excellent student at Morristown High School, and he hopes to go to college to study math and English with the goal of becoming a math teacher or an accountant.  But he knows that if he does not obtain legal status, he cannot achieve these goals.

67.    K.M.R.L. is also in removal proceedings.  He will be sent back to Guatemala if his SIJS petition is denied, as USCIS has said in a NOID that it will be.  His father was an alcoholic who died when K.M.R.L. was almost 13. Because of his father's drinking, K.M.R.L. started working to support the family when he was 10.  After his father's death, his mother sent him to work full time. He worked 18-hour shifts in a sweater factory, alternating with 9-12-hour shifts

as a farmworker.  He left Guatemala after four years of such work, when he was 17, riding on top of a train known as "The Beast" through Mexico.

68.   After his apprehension and detention near the border, federal officials released K.M.R.L. to his older brother, who eventually gained custody of him in a Family Part proceeding.  K.M.R.L. feels safe living in the United States with his brother, who has protected and taken care of him.  He does not want to leave his newfound home.  Someday, K.M.R.L. wants to open up his own business, such as a restaurant or a supermarket, but he knows he will need to be in the United States legally in order to achieve this dream.

69.   The harms Plaintiffs are enduring extend to the Proposed Class they seek to represent.  Plaintiffs and all members of the Proposed Class face the risk of deportation if and when USCIS denies their SIJS petitions based on the unsupported conclusions that the Family Part must have jurisdiction to order reunification with a parent and that the court lacks such jurisdiction.  Those, like W.A.O., H.H.M.C., N.J.L., and K.M.R.L., who are already in removal proceedings face imminent deportation.  Those who filed "affirmatively" for SIJS, meaning that they were not yet in removal proceedings at the time of filing, will be subject to such proceedings upon the denial of their applications.  USCIS, *Policy Memorandum: Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens*, Point V, at 7 (June 28, 2018) (providing that USCIS "will issue an NTA [Notice to

Appear]" to initiate proceedings against petitioners who are denied SIJS and are "not lawfully present in the United States") (A-78).[4]

70.    A New Jersey court has already concluded that repatriation would be contrary to the best interests of every Plaintiff and member of the Proposed Class. In some cases, this determination rested in part on evidence that the juvenile had faced and would continue to face gang violence, including assaults and death threats, in his country of origin.  In other cases, the Family Part concluded that the juvenile had no home to return to and would have to fend for himself if repatriated, despite his continuing dependence on the care and guidance of a responsible adult.

71.    Further, a state court has already concluded that reunification with one or both of the parents of all Plaintiffs and class members is not viable because at least one parent abused, neglected, or abandoned them, or otherwise failed to care for them to the standards of New Jersey law.  For many Plaintiffs and class members, their court-appointed custodians or foster families are providing the first stable homes they have ever known.  Their involuntary separation from their caretakers would disrupt the fragile integrity of their current families, severing ties that now sustain and direct them.

72.    Removal and repatriation in spite of such state court determinations pose an immediate risk of irreparable harm.

---

[4] Moreover, beginning September 11, 2018, USCIS adjudicators can deny SIJS petitions for lack of initial evidence without first giving children an opportunity to respond to Requests for Evidence or NOIDs.  USCIS, *Policy Memorandum: Issuance of Certain RFEs and NOIDs; Revisions to Adjudicator's Field Manual (AFM) Chapter 10.5(a), Chapter 10.5(b)* (July 13, 2018) (A-84–91).

73.    The erroneous denial or unjustified delay of SIJS petitions also causes ongoing psychological and physical harms to youth between the ages of 18 and 21 who have already suffered parental mistreatment or neglect.  Impeding access to the protections of SIJS has had, and will continue to have, immediately damaging and deleterious effects on the medical and mental health of these juveniles. Unjustly delaying or denying SIJS petitions causes or perpetuates mental health conditions such as depression and anxiety and can lead to further traumatization of vulnerable youth.  Simultaneously, access to critical medical, dental, and mental health interventions needed to treat existing symptoms may be jeopardized by impediments to obtaining subsidized health insurance for undocumented immigrants.  Immigrant youth will continue to be harmed psychologically and physically until the erroneous denial of SIJS applications is stopped. *See generally* Declaration of Douglas Bishop, M.D. (Apr. 9, 2019) (A-184–95).

74.    Furthermore, the unjustified delay or denial of legal immigration status makes it significantly more difficult for juveniles in this age group to complete their education and find work.  For most class members, deportation would end their education.  Even for those who are not swiftly deported, remaining in the United States without legal authorization would impede their access to scholarships or financial aid for college and relegate them to the distinct labor market for undocumented workers, where work options, wages, and advancement are all depressed by their lack of legal status. *See generally* Declaration of Judith Meltzer (Apr. 18, 2019) (A-196–210).

## CLASS ACTION ALLEGATIONS

75.    Pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), Plaintiffs bring this action on behalf of themselves and all others who are similarly situated.

76.    Plaintiffs seek to represent the following class:

> Individuals who have filed or will file SIJS petitions based on New Jersey Family Part Orders that were entered between the petitioners' 18th and 21st birthdays, and whose SIJS petitions are, have been, or will be delayed, denied, or revoked on the ground that the Family Part lacks the authority, power, or jurisdiction to make a legal conclusion that the petitioner should be reunified with a parent and/or to order such reunification.

77.    A class action is proper under Rule 23(a) because:

(1)    The class is so numerous that joinder of all members is impracticable.  A voluntary survey of New Jersey lawyers who represent immigrant children shows that there are a minimum of 105 present members of the class.  Mandelbaum Decl. ¶¶ 18, 25 (A-169, A-171–72).  Because it is highly unlikely that all lawyers with clients in the class responded, and because the class includes juveniles who are self-represented, the actual number of class members is higher than the survey results show.

(2)    There are questions of law or fact common to the class.  The members of the class were between the ages of 18 and 21 when they received New Jersey Family Part Orders making SIJ Findings.  All are subject to the delay, denial, or revocation of SIJS based on

Defendants' arbitrary imposition of additional eligibility requirements not supported by law. Questions of law common to members of the Proposed Class include whether Defendants' actions violate the APA by exceeding statutory authority under the INA, failing to defer to state court decisions as required by the INA, failing to follow procedures prescribed by the APA, and undermining due process.

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class. Each of the Plaintiffs asserts the same APA violations, which are also the central claims of the class members.

(4) The representative parties will fairly and adequately protect the interests of the class. There are no conflicts between the individuals' claims and those of the class, and the class representatives are able to rely on pro bono class counsel with the expertise and resources to prosecute their claims.

78. The Proposed Class also satisfies Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief and corresponding declaratory relief are appropriate respecting the class as a whole. Defendants are implementing their new SIJS eligibility requirement to delay and deny SIJS to all juveniles in New Jersey who rely on Family Part Orders issued between their 18th and 21st birthdays. Defendants repeatedly rely on the same grounds: that the

Family Part somehow cannot make the necessary findings regarding the non-viability of reunification with one or both parents because that court allegedly lacks the authority, power, or jurisdiction to form a legal conclusion about the juvenile's need for reunification with a parent and/or to order such reunification if warranted. A declaratory judgment holding that this new eligibility requirement is *ultra vires*, together with an injunction preventing Defendants from relying on this new requirement to delay, deny, or revoke SIJS, would remedy the problem for all members of the Proposed Class in one stroke.

79. The Proposed Class is represented by pro bono counsel from Lowenstein Sandler with extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights cases. Class counsel also have extensive experience representing immigrant children seeking SIJS.

## CLAIMS FOR RELIEF

## COUNT ONE

## ADMINISTRATIVE PROCEDURE ACT—NOT IN ACCORDANCE WITH THE LAW

80. Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

81. Defendants are subject to suit under the Administrative Procedure Act. *See* 5 U.S.C. § 703.

82. The imposition of new SIJS requirements is final action subject to judicial review because it marks the "consummation of the agency's

decisionmaking process" and is one "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks omitted).

83.    The APA directs that reviewing courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law . . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

84.    Defendants violate the INA, 8 U.S.C. §§ 1101(a)(27)(J), 1232(d)(6), and exceed their authority by arbitrarily imposing requirements not found in the SIJS Statute or the valid parts of the SIJS regulations and relying on such requirements to delay, deny, or revoke the SIJS petitions of juveniles who received SIJ Findings from the New Jersey Family Part between their 18th and 21st birthdays.

85.    Defendants have caused and will continue to cause Plaintiffs and class members irreparable harm by disqualifying them from SIJS on this basis.

86.    Plaintiffs and members of the Proposed Class have no adequate, available remedies other than the relief they seek through this action.

## COUNT TWO

### ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS ACTION

87.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

88.    The APA directs that reviewing courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (D).

89.    Defendants engaged in arbitrary and capricious agency action when they decided to break from years of consistent practice by imposing a new eligibility requirement for SIJS that disqualifies juveniles who received Family Part SIJ Findings when they were between 18 and 21 years old.  Defendants' action contravenes federal law, fails to defer to the state court's interpretation of its own laws, exceeds the authority delegated to the agency by Congress, and imposes requirements not contemplated by Congress.

90.    Defendants engaged in arbitrary and capricious agency action by failing to provide timely or adequate notice of their policy shift to the public, in violation of their obligation to publish the new policy.  5 U.S.C. § 552(a)(1), (2).

91.    Defendants engaged in arbitrary and capricious agency action by failing to provide a reasoned explanation for their departure from prior practice and imposition of a new eligibility requirement for SIJS.

92.    Defendants engaged in arbitrary and capricious agency action by failing to defer to the New Jersey state courts, which have exclusive authority under the SIJS Statute to determine their own jurisdiction to make the necessary SIJ Findings for those juveniles whom the Family Part deems to require its protection.

93.    Defendants' violation has caused and will continue to cause Plaintiffs and members of the Proposed Class irreparable harm.

## COUNT THREE

## ADMINISTRATIVE PROCEDURE ACT—NOTICE-AND-COMMENT RULEMAKING

94.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

95.    Defendants further violate the APA, 5 U.S.C. §§ 706(2)(D), 553, which requires that federal agencies conduct rulemaking before engaging in action that impacts substantive rights.

96.    USCIS is an "agency" under the APA, and the implementation of new legal guidance and resulting imposition of a new SIJS requirement are "rules" under the APA.  5 U.S.C. § 551(1), (4).

97.    In implementing the new USCIS policy, the agency has changed the substantive criteria necessary for obtaining SIJS relief.  Defendants did not follow the procedures required by the APA before taking action impacting these substantive rights.

98.    With exceptions that are not applicable here, agency rules must go through notice-and-comment rulemaking.  5 U.S.C. § 553.

99.    Defendants promulgated and implemented these rules without authority and without notice-and-comment rulemaking, in violation of the APA. Plaintiffs are impacted because they have not had the opportunity to comment on the imposition of a new SIJS eligibility requirement.

100.    Defendants' violation has caused and will continue to cause harm to Plaintiffs and members of the Proposed Class.

## COUNT FOUR

## ADMINISTRATIVE PROCEDURE ACT—CONSTITUTIONAL VIOLATION

101.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth here.

102.   The APA requires that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

103.   Immigrants who are physically present in the United States and who have developed substantial connections to this country are protected by the Due Process Clause.  Plaintiffs and members of the Proposed Class—who have lived in this country for years, appeared in the New Jersey Family Part to seek protection and/or placement with responsible custodians, received state court orders that include SIJ findings, and applied to USCIS for SIJS—have established connections with this country sufficient to allow them to invoke the Due Process Clause.

104.   Due process principles require Defendants to follow established statutory and regulatory processes in adjudicating SIJS petitions.  Due process protections attach to the statutory rights Congress has accorded to SIJS-eligible youth.

105.   The statutory and regulatory requirements established in 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6) and in 8 C.F.R. § 204.11 vest in Plaintiffs and members of the Proposed Class a constitutionally protected interest in the fair and lawful consideration of their petitions for SIJS and the numerous

benefits that follow.    These benefits include mandatory and discretionary exemptions from otherwise generally applicable grounds of inadmissibility and an opportunity to obtain lawful permanent residency.  8 U.S.C. §§ 1255(a), (h).

106.    Defendants have imposed a policy of delaying and denying SIJS to petitioners who file based on New Jersey Family Part orders issued when they were 18-21 years old.    This policy has no basis in the relevant statutes and regulations and, in fact, contravenes the governing law.  Plaintiffs and members of the Proposed Class had no notice of this policy and no opportunity to object to it. They have therefore been deprived of the most basic elements of due process.

107.    Defendants' due process violations have caused and will continue to cause irreparable harm to Plaintiffs and members of the Proposed Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

1.    Permit this case to proceed as a class action and certify a class as defined here and in the accompanying motion for class certification;

2.    Declare that Defendants' imposition of a new requirement for SIJS, and delay and denial of Plaintiffs' and class members' SIJS petitions, violate the Administrative Procedure Act by (1) exceeding the agency's statutory authority under the INA, (2) usurping the authority granted to state courts by the INA, (3) depriving Plaintiffs and class members of due process of law, and (4) failing to follow prescribed procedures;

3.    Preliminarily and permanently enjoin Defendants from delaying, denying, or revoking SIJS petitions on the ground that the New Jersey Family Part

does not have jurisdiction, power, or authority to make a legal conclusion that a juvenile between the ages of 18 and 21 should be reunified with a parent and/or to order such reunification;

    4.    Permanently and preliminarily enjoin Defendants to:

        a.    rescind improper denials or revocations of Plaintiffs' and class members' SIJS petitions,

        b.    reopen their petitions, and

        c.    readjudicate their petitions without relying on any requirement or policy declared invalid in this case;

    5.    Permanently and preliminarily enjoin Defendants from providing fewer than 14 days' notice to Plaintiffs' counsel before taking any adverse adjudicatory or enforcement action against any of the Plaintiffs or members of the Proposed Class during the pendency of this litigation;

    6.    Grant Plaintiffs reasonable attorneys' fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

    7.    Grant any other and further relief that this Court may deem just and proper.

Dated: April 29, 2019

s/ Catherine Weiss
Catherine Weiss
(cweiss@lowenstein.com)
Natalie J. Kraner
Craig Dashiell
Eric R. Suggs
Tracy Buffer
Claudia Lorenzo
LOWENSTEIN SANDLER
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500

Pro Bono Counsel for Plaintiffs
W.A.O., H.H.M.C., N.L.J., and
K.M.R.L., on behalf
of themselves and all others similarly
situated

## CERTIFICATION UNDER L. Civ. R. 11.2

I certify that the matter in controversy is not the subject of any other action

pending in any court or of any pending arbitration or administrative proceeding.

s/ Catherine Weiss
Catherine Weiss
LOWENSTEIN SANDLER
One Lowenstein Drive
Roseland, New Jersey 07068
(973) 597-2500