Catherine Weiss
(cweiss@lowenstein.com)
Natalie J. Kraner
Craig Dashiell
Eric R. Suggs
Tracy Buffer
Claudia Lorenzo
LOWENSTEIN SANDLER
One Lowenstein Drive
Roseland, New Jersey 07068
973-597-2500
Pro Bono Counsel to Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| W.A.O., H.H.M.C., N.L.J., and K.M.R.L., on behalf of themselves and all others similarly situated, | Case No. CV |
| Plaintiffs, | |
| v. | |
| LEE FRANCIS CISSNA, Director, U.S. Citizenship and Immigration Services; KEVIN McALEENAN, Acting Secretary, U.S. Department of Homeland Security; ROBERT COWAN, Director, National Benefits Center, U.S. Citizenship and Immigration Services; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| | ORAL ARGUMENT REQUESTED |
| Defendants. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................... 3

STATUTORY BACKGROUND ............................................................................ 8

ARGUMENT ...................................................................................................... 10

I.    Plaintiffs Have a Likelihood of Success on the Merits ................................ 11

    A.    Standard of Review Under the APA .................................................. 11

    B.    Defendants' Adoption and Enforcement of a New Eligibility
        Requirement for SIJS Is Final Agency Action and Therefore
        Subject to Judicial Review Under the APA ....................................... 12

        1.    The eligibility requirement at issue is new ............................... 12

        2.    USCIS's adoption of the new policy constitutes final
                agency action, reviewable by this Court .................................. 15

    C.    Defendants Violate the APA by Imposing a New Eligibility
        Requirement for SIJS That Contravenes Federal Law ...................... 17

        1.    Defendants' new eligibility requirement is in excess of,
                and in conflict with, the criteria established by the SIJS
                Statute and associated regulations ............................................ 17

        2.    Defendants have failed to defer to state court decisions
                on questions of state law, as required by the SIJS Statute ........ 20

    D.    Defendants Violate the APA by Imposing a New
        Eligibility Requirement for SIJS Without the Process the
        Statute Requires ................................................................................ 24

        1.    Defendants failed to offer a reasoned explanation for
                their departure from established practice .................................. 25

        2.    Defendants adopted and enforced the new eligibility
                requirement without notice-and-comment rulemaking ............ 26

        3.     Defendants failed to provide timely or adequate notice of the change in policy ...................................................................28

    E.    Defendants Violate the APA by Imposing a New Eligibility Requirement for SIJS that Deprives Plaintiffs and Class Members of this Relief Without Due Process of Law ........................30

II.    Plaintiffs and Class Members Face Immediate, Irreparable Harm ..............32

III.    The Balance of Equities and the Public Interest Favor Plaintiffs ................37

CONCLUSION ........................................................................................38

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**CASES**

*A.E.C. v. P.S.C.*,
453 N.J. Super. 19 (App. Div. 2018)......................................................22, 23, 24

*Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen.*,
910 F.3d 106 (3d Cir. 2018) .......................................................................10, 11

*Bennett v. Spear*,
520 U.S. 154 (1997)....................................................................................15, 16

*Brady v. Maryland*,
373 U.S. 83 (1963).............................................................................................23

*Campbell Soup Co. v. Conagra, Inc.*,
977 F.2d 86 (3d Cir. 1992) ................................................................................32

*CBS Corp. v. F.C.C.*,
663 F.3d 122 (3d Cir. 2011) ................................................................11–12, 25

*Cerro Metal Prods. v. Marshall*,
620 F.2d 964 (3d Cir. 1980) ..............................................................................27

*City of Jersey City v. Pierce*,
669 F. Supp. 103 (D.N.J. 1987)........................................................................27

*Cruz-Gonzalez ex rel. D.M.S.C. v. Kelly*,
No. CV 16-5727, 2017 WL 3390234 (E.D. Pa. Aug. 7, 2017) .........................34

*Dia v. Ashcroft*,
353 F.3d 228 (3d Cir. 2003) (en banc) .............................................................32

*De Jesus Martinez v. Nielsen*,
341 F. Supp. 3d 400 (D.N.J. 2018)...................................................................33

*Encino Motorcars, LLC v. Navarro*,
136 S. Ct. 2117 (2016)......................................................................................25

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009).......................................................................25, 26

*Filippone v. Lee*,
304 N.J. Super. 301 (App. Div. 1997) .............................................22

*Franklin v. Mass.*,
505 U.S. 788 (1992)...........................................................................15

*Geisinger Cmty. Med. Ctr. v. Sec'y, U.S. Dep't of Health & Human Servs.*,
794 F.3d 383 (3d Cir. 2015) .............................................................12

*H.S.P. v. J.K.*,
223 N.J. 196 (2015) ...........................................................................20

*In re J-A-M-R-*,
2018 WL 6617332 (USCIS Admin. Appeals Office Nov. 28, 2018) ...................................................................................24

*In re Revel AC, Inc.*,
802 F.3d 558 (3d Cir. 2015) .............................................................11

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
882 F.2d 797 (3d Cir. 1989) .............................................................33

*J.L. v. Cissna*,
341 F. Supp. 3d 1048 (N.D. Cal. 2018),
*appeal filed* (9th Cir. Dec. 24, 2018).........................................passim

*J.S.R. ex rel. J.S.G. v. Sessions*,
330 F. Supp. 3d 731 (D. Conn. 2018)...............................................34

*Kahn v. United States*,
753 F.2d 1208 (3d Cir. 1985) ...........................................................28

*Landon v. Plasencia*,
459 U.S. 21 (1982).............................................................................30

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ............................................................34

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)................................................................................27

*M.B. v. Quarantillo*,
    301 F.3d 109 (3d Cir. 2002) ...............................................................23

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..............................................................................32

*Minard Run Oil Co. v. U.S. Forest Serv.*,
    670 F.3d 236 (3d Cir. 2011) ...............................................................15

*Moreno Galvez v. Cissna*,
    No. 2:19-cv-00321 (W.D. Wash. Mar. 5, 2019)....................................3

*Morton v. Ruiz*,
    415 U.S. 199 (1974)..............................................................................28

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................11

*Ms. L. v. U.S. Immigration & Customs Enf't*,
    310 F. Supp. 3d 1133 (S.D. Cal. 2018) ..............................................34

*Neighborhood Legal Servs., Inc. v. Legal Servs. Corp.*,
    466 F. Supp. 1148 (D. Conn. 1979).............................................28–29

*Nken v. Holder*,
    556 U.S. 418 (2009)..............................................................................37

*O.Y.P.C. v. J.C.P.*,
    442 N.J. Super. 635 (App. Div. 2015) ................................................22

*Osorio-Martinez v. Attorney General*,
    893 F.3d 153 (3d Cir. 2018) ......................................................passim

*Padilla v. Kentucky*,
    559 U.S. 356 (2010)..............................................................................33

*Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor*,
    776 F.3d 157 (3d Cir. 2015) ...............................................................12

*Powderly v. Schweiker*,
  704 F.2d 1092 (9th Cir. 1983) ..............................................................28

*R.F.M. v. Nielsen*,
  No. 18-CV-5068 (JGK), 2019 WL 1219425
  (S.D.N.Y. Mar. 15, 2019) .............................................................passim

*Riley v. Brown*,
  No. 06-00331, 2006 WL 842437 (D.N.J. Mar. 29, 2006) ...................................36

*Singer Mgmt. Consultants v. Milgram*,
  650 F.3d 223 (3d Cir. 2011) ..............................................................11

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ............................................................34

*Winter v. Nat. Res. Def. Council, Inc.*,
  55 U.S. 7 (2008)..........................................................................10

*Yeboah v. U.S. Dep't of Justice*,
  345 F.3d 216 (3d Cir. 2003) ...........................................................23, 32

*Zadvydas v. Davis*,
  533 U.S. 678 (2001)......................................................................30

**CONSTITUTIONS AND STATUTES**

U.S. Const. amend. V ("Due Process Clause") ...............................................30

5 U.S.C. § 552 ....................................................................25, 28, 29

5 U.S.C. § 553 ....................................................................25, 26, 27

5 U.S.C. § 706 ...............................................................11, 17, 24, 29, 30

8 U.S.C. § 1101(a)(27)(J) (the "SIJS Statute")........................................passim

8 U.S.C. § 1101(b)(1)..................................................................9, 19

8 U.S.C. § 1232(d)(2)....................................................................13

8 U.S.C. § 1232(d)(6)..................................................................9, 19

8 U.S.C. § 1255(a), (h)...........................................................10, 31, 37

Immigration Act of 1990, Pub. L. No. 101-649, § 153,
    104 Stat. 4978 (1990).........................................................................8

Trafficking Victims Protection Reauthorization Act of 2008, Pub. L.
    No. 110-457, § 235, 122 Stat. 5044 (2008) ("TVPRA")...........................passim

N.J. Const. art. VI, § 3, ¶ 3.................................................................21

N.J. Stat. Ann. §§ 2A:4A-23 to -48.......................................................21

N.J. Stat. Ann. § 2A:34-65..................................................................31

N.J. Stat. Ann. §§ 9:1-1 to 9:3A-7.4......................................................21

N.J. Stat. Ann. § 9:6-8.54(c)...............................................................24

N.J. Stat. Ann. § 9:17B-3....................................................................22

N.J. Stat. Ann. §§ 30:4C-1.1 to -92.......................................................21

## REGULATIONS

8 C.F.R. § 204.11.........................................................................passim

56 Fed. Reg. 23207 (May 21, 1991)........................................................19

58 Fed. Reg. 42843 (Aug. 12, 1993)...............................................9, 19, 20

## RULES

N.J. Ct. R. 5:1-2.............................................................................21

N.J. Ct. R. 5:8...............................................................................21

N.J. Ct. R. 5:9A.............................................................................21

N.J. Ct. R. 5:10.............................................................................21

N.J. Ct. R. 5:12.............................................................................21

N.J. Ct. Rs. 5:19 to 5:25...................................................................21

OTHER AUTHORITIES

Mem. from Michael Aytes, Acting Assoc. Dir., Domestic Ops.,
    USCIS, to Regional Directors et al. (Sept. 12, 2006),
    https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/
    Static_Files_Memoranda/Archives%201998-
    2008/2006/afm_ch22_091206r.pdf ...................................................................18

Centers for Medicare & Medicaid Servs., *Medicaid and CHIP
    Coverage of Lawfully Residing Children and Pregnant Women*,
    https://www.medicaid.gov/medicaid/outreach-and-enrollment/
    lawfully-residing/index.html..................................................................................35

Letter from Centers for Medicare & Medicaid Servs. to State Health
    Officials (July 1, 2010),
    https://downloads.cms.gov/cmsgov/archived-
    downloads/SMDL/downloads/SHO 10006.pd ............................................35–36

Ted Hesson, *USCIS Explains Juvenile Visa Denials,*
    Politico, Apr. 25, 2018.........................................................................................29

N.J. Higher Educ. Student Assistance Auth.,
    *Fin. Aid Resources for New Jersey Dreamers*,
    https://www.hesaa.org/Pages/NJAlternativeApplication.aspx ...........................36

N.J. Higher Educ. Student Assistance Auth.,
    *Frequently Asked Questions for New Jersey Dreamers*,
    https://www.hesaa.org/Documents/NJAltAPPQnA.pdf....................................36

Mem. from Donald Neufeld, Acting Assoc. Dir., Domestic Ops.,
    USCIS, to Field Leadership (March 24, 2009)....................................................23

Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green
    Card Hopes Fade*, N.Y. Times, April 18, 2018 .................................................29

USCIS, Consolidated Handbook of Adjudication Procedures,
    Vol. 6, Part D, *Petitions for Special Immigrant Juveniles
    (SIJs)* (April 30, 2018) ("CHAP")............................................14, 15, 20–21, 29

USCIS, Office of Chief Counsel Guidance (Feb. 2018) ("OCC
    Guidance") ...............................................................................13, 14, 17, 18, 29

USCIS Policy Manual, Vol. 6, Part J
(last updated Apr. 19, 2019) ...............................................................21

USCIS, *Policy Memorandum: Updated Guidance for the Referral of
Cases and Issuance of Notices to Appear (NTAs) in Cases
Involving Inadmissible and Deportable Aliens* (June 28, 2018) .................33–34

USCIS, *USCIS to Centralize Processing of Special Immigrant
Juvenile Cases* (Nov. 1, 2016),
https://www.uscis.gov/news/alerts/uscis-centralize-processing-
special-immigrant-juvenile-cases ......................................................13

## PRELIMINARY STATEMENT

This class action challenges the federal government's recent refusal to grant Special Immigrant Juvenile Status ("SIJS") to young people who were between 18 and 21 years old when they obtained child welfare findings from a state juvenile court, a necessary predicate to petitioning for SIJS.  Congress created SIJS to protect vulnerable immigrant children by allowing them to remain lawfully in the United States in loving and stable homes after one or more of their parents proved unwilling or unable to care for them.  In violation of the federal statute and regulations governing SIJS, Defendants have imposed a new eligibility requirement, resulting in the delay and denial of scores of meritorious petitions and placing young people in jeopardy of deportation.

The controlling statute, 8 U.S.C. § 1101(a)(27)(J) (the "SIJS Statute"), delineates clear roles for the state courts and United States Citizenship and Immigration Services ("USCIS") in the process: first, in the context of a family law proceeding, a "juvenile court" makes specified factual findings grounded in state child welfare laws ("SIJ Findings"); second, USCIS adjudicates the SIJS petition, which must include the SIJ Findings, to determine whether the child qualifies for immigration relief.  Accordingly, USCIS relies on SIJ Findings from state courts, which themselves determine whether they have the authority under state law to issue such orders.  The SIJS Statute affords relief to any qualifying juvenile who submits a SIJS petition to USCIS before turning 21.

Here, USCIS has acted outside its authority and usurped state authority by denying SIJS to juveniles who were between the ages of 18 and 21 when they

received predicate orders from the Superior Court of New Jersey, Chancery Division, Family Part (the "Family Part"). Sometime in 2018, USCIS began imposing a new requirement for eligibility: that the Family Part have jurisdiction to order a juvenile to return to the custody of the parent. This requirement has no basis in the law. Moreover, contrary to state law as interpreted by the New Jersey Appellate Division, USCIS has concluded that the Family Part lacks such jurisdiction with respect to juveniles older than 18. USCIS's delays and denials under this policy represent a sharp break with past practice and violate the Administrative Procedure Act ("APA").

The named Plaintiffs and those similarly situated face immediate, irreparable harms unless this Court issues a preliminary injunction. These harms include the imminent threat of deportation, notwithstanding findings by the New Jersey Family Part that it would be against the best interest of each and every member of the proposed class to be repatriated. These best-interest findings often rest on the absence of any fit caretaker in the juvenile's home country and sometimes also on the need to protect the juvenile from continuing exposure to violence there. In cases where the New Jersey Family Part has vested custody in an adult caretaker, deportation would also uproot the juvenile from what is often the first stable home he or she has ever known.

Federal district courts in California and New York have preliminarily or permanently enjoined this policy and pattern of denials. *J.L. v. Cissna*, 341 F. Supp. 3d 1048 (N.D. Cal. 2018) (preliminary injunction), *appeal filed* (9th Cir. Dec. 24, 2019); *R.F.M. v. Nielsen*, No. 18-CV-5068 (JGK), 2019 WL 1219425

(S.D.N.Y. Mar. 15, 2019) (granting summary judgment), ECF No. 129 (entering judgment) (S.D.N.Y. Apr. 8, 2019).   Juveniles in this age group in Washington State have also filed a challenge.   Class Action Complaint for Injunctive and Declaratory Relief, *Moreno Galvez v. Cissna*, No. 2:19-cv-00321 (W.D. Wash. Mar. 5, 2019), ECF No. 1.

Plaintiffs seek declaratory and injunctive relief to stop USCIS from relying on an extra-statutory eligibility requirement for SIJS that violates federal law and poses an immediate risk of irreparable harm to them and the class they represent. Plaintiffs respectfully request that this Court compel the government to rescind the improper SIJS denials and revocations already issued, reopen those SIJS petitions, and enjoin any future denials or revocations of SIJS based on USCIS's assertion that the Family Part lacks authority to place juveniles between the ages of 18 and 21 in their parents' custody.

## STATEMENT OF FACTS

Plaintiffs W.A.O., H.H.M.C., N.L.J., and K.M.R.L. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), bring this action to protect immigrant youth from the wrongful denial of their SIJS petitions and the irreparable harms that follow.

W.A.O. is a 21-year-old from El Salvador whose father abandoned him at birth.   Declaration of W.A.O. ¶ 3 (Apr. 14, 2019) (A-92).[1]   When W.A.O. was six, his father was murdered.   *Id.* ¶ 4 (A-93).   W.A.O's mother had intimate partners in

---

[1] Pages in the Appendix are shown as (A-__).

El Salvador who habitually abused both her and W.A.O. *Id.* ¶¶ 5–7, 9 (A-93). She migrated to the United States when W.A.O. was nine. *Id.* ¶ 10 (A-94).

Living without parental protection in El Salvador, W.A.O. was harassed and threatened by local gangs. *Id.* ¶¶ 14–22 (A-94–96). Gang members attempted unsuccessfully to recruit him and met his refusals with threats to his life and the lives of his family members. *Id.* ¶ 18 (A-95). When his uncle confronted the gang on W.A.O.'s behalf, the gang ambushed the uncle and fired several shots, hitting him in the shoulder. *Id.* ¶ 20 (A-96). His uncle fled their hometown, and W.A.O. was essentially confined to the house as gang members kept watch outside. *Id.* ¶¶ 19–21 (A-96).

With his two younger siblings in tow, W.A.O. eventually headed north, arriving in the United States in January 2014. *Id.* ¶ 23 (A-96). Beginning in 2015, his mother went to court to seek custody of her children and SIJ Findings on their behalf. After an appeal and remand, the Family Part entered its final order on December 5, 2017. *Id.* ¶ 27 & Ex. A (A-97, A-102). In December 2016, W.A.O. submitted a SIJS petition to USCIS (based on an earlier, and subsequently updated, version of the Family Part Order). *Id.* ¶ 28 (A-98). Approximately 21 months later, in September 2018, USCIS denied his application based on its unlawful requirement. *Id.* ¶ 29 & Ex. B (A-98, A-106). W.A.O.'s younger siblings filed at the same time he did, based on the same family history, but they were granted SIJS. *Id.* ¶ 29 (A-98).

Because he is already in removal proceedings, W.A.O. faces an imminent risk of deportation. Deportation to El Salvador would mean re-separation from his

mother.   W.A.O. cannot bear the idea of being parted from her again; without abusive men in the household, he feels safe with her for the first time.  *Id.* ¶ 34 (A-100).  He has no one in El Salvador to look out for him.  *Id.* (A-100).  This would make him especially susceptible to renewed gang threats and violence.  *Id.* ¶¶ 32–33 (A-99).  If he is allowed to stay in this country, W.A.O. will soon start taking English classes at Union County College.  He aspires to be an engineer or police officer but has had to put those dreams on hold because of the wrongful denial of his SIJS application.  *Id.* ¶ 35 (A-100).

H.H.M.C. is a 20-year-old from Honduras.  Declaration of H.H.M.C. ¶ 2 (Apr. 19, 2019) (A-112).  His father has neglected and abandoned him since birth.  *Id.* ¶ 10 (A-113).  His mother migrated to the United States when he was three years old, leaving him with his grandparents.  *Id.* ¶ 5 (A-113).  When H.H.M.C. was 13 years old, a local gang murdered his uncle and then began to threaten and harass him.  *Id.* ¶¶ 13–14 (A-113–14).  On Christmas Day, 2013, armed gang members broke into his home, threatened him and his family, and stole what they could carry.  *Id.* ¶ 15 (A-114).  H.H.M.C. told his father about the danger he faced, but his father did nothing.  *Id.* ¶ 16 (A-114).  H.H.M.C. fled Honduras soon afterwards.

Arriving in the United States in March 2014, when he was 15, H.H.M.C. was reunified with his mother, who enrolled him in New Brunswick High School.  *Id.* ¶¶ 17, 19 (A-115).  Three years later, the family went to court so that his mother and her new husband could gain custody of H.H.M.C.  *Id.* ¶ 22 (A-116).  On May 30, 2017, the Family Part granted them custody and issued SIJ Findings.  *Id.* & Ex.

A (A-116, A-120).  In June 2017, H.H.M.C. submitted a SIJS application.  *Id.* ¶ 23 (A-116).  Approximately 19 months later, in January 2019, USCIS denied his application based on its unlawful requirement.  *Id.* ¶ 24 & Ex. B (A-116, A-123).

H.H.M.C. is in removal proceedings and fears that, unless USCIS overturns his SIJS denial, he will not be able to avoid deportation to a country where he will have no fit caretaker and no protection from gang violence.  *Id.* ¶¶ 25–27 (A-117).  Here in the United States, H.H.M.C. has many goals he would like to achieve.  In particular, he wants to learn to work with airplanes, which he has always loved, but he understands that he needs legal status to pursue this dream.  *Id.* ¶ 29 (A-117).  In the meantime, he is working in construction and using his earnings to support his family both here and in Honduras.  *Id.* ¶¶ 19–20 (A-115).

N.L.J. is a 21-year-old from Guatemala.  Declaration of N.L.J. ¶ 3 (Apr. 11, 2019) (A-129).  Both of his parents are alcoholics, and his father is a violent one.  *Id.* ¶¶ 13–17 (A-130–31).  When he was younger, his mother would lie drunk in the street, and his father would hit and kick N.L.J. and his siblings when he drank.  *Id.* ¶¶ 13, 16 (A-130).  His father often dragged N.L.J. to bars with him, and gang members frequently approached them and beat them up as they wandered through town.   *Id.* ¶¶ 17–18 (A-131).   The penultimate assault resulted in injuries to N.L.J.'s arm and a blow that knocked him unconscious.  *Id.* ¶ 23 (A-131).  His father was also seriously wounded.  *Id.* (A-131).  After yet another attack, N.L.J. was afraid to leave the house, and his parents were too impaired to help.  *Id.* ¶¶ 25–26 (A-132).  He fled soon afterwards.  *Id.* ¶ 27 (A-132).

N.L.J. arrived in the United States in May 2014 and went to live with his sister, her husband, and their young children in Morristown.  *Id.* ¶¶ 28, 29 (A-132). In late 2016, his sister petitioned the Family Part for custody of N.L.J., and the court issued a custody order and SIJ Findings.  *Id.* ¶ 33 & Ex. A (A-132, A-137). In July 2017, N.L.J. submitted a SIJS application to USCIS.  *Id.* ¶ 34 (A-133). Approximately 14 months later, USCIS sent him a Notice of Intent to Deny ("NOID") based on its unlawful requirement.  *Id.* ¶ 35 & Ex. B (A-133, A-141).

N.L.J. is currently in removal proceedings and, unless USCIS changes the position stated in the NOID, he faces imminent deportation to Guatemala.  *Id.* ¶ 36 (A-134).  He has no one to look out for him there, no one to protect him from repeated and intensifying gang attacks.  *Id.* ¶¶ 37–39 (A-134).  In contrast, here, he is safe and happy living with his sister and her husband.  They care for him and protect him in ways his parents never did.  *Id.* ¶ 40 (A-134).  He was an excellent student at Morristown High School, and he hopes to go to college to study math and English, eventually becoming a math teacher or an accountant.  He knows, however, that he cannot achieve these goals unless he gains legal status.  *Id.* ¶ 41 (A-134).

K.M.R.L. is a 20-year-old from Guatemala.  Declaration of K.M.R.L. ¶ 2 (Apr. 26, 2019) (A-148).  His father was an alcoholic who died when K.M.R.L. was almost 13.  *Id.* ¶ 5 (A-149).  Because of his father's drinking, K.M.R.L. started working to support the family when he was 10.  *Id.* (A-149).  After his father's death, his mother sent him to work full time.  He worked 18-hour shifts in a sweater factory, alternating with 9-12-hour shifts as a farmworker.  *Id.* ¶¶ 6–9 (A-

149).  He left Guatemala after four years of this, when he was 17, riding through Mexico on top of a train known as "The Beast."  *Id.* ¶ 10 (A-150).

K.M.R.L. arrived in the United States in November 2015 and joined his older brother in West New York, New Jersey.  *Id.* ¶¶ 10–11 (A-150).  On May 22, 2017, the Family Part placed him in his brother's custody and entered SIJ Findings on his behalf.  *Id.* ¶ 15 & Ex. A (A-150, A-154).  In June 2017, K.M.R.L. submitted a SIJS application to USCIS.  *Id.* ¶ 16 (A-151).  Approximately 19 months later, in January 2019, USCIS sent him a NOID based on its unlawful requirement.  *Id.* ¶ 17 & Ex. B (A-151, A-157).

K.M.R.L. is in removal proceedings.  He will be sent back to Guatemala if his SIJS petition is denied, as USCIS has said it will be.  *Id.* ¶ 18 (A-151).  There, he has no fit caretaker.  *Id.* ¶ 20 (A-152).  Here, he feels safe living with his brother, who has protected and provided for him.  *Id.* ¶ 19 (A-151).  Someday, K.M.R.L. wants to open up his own business, such as a restaurant or a supermarket, but he knows he will need to be in the United States legally in order to achieve this dream.  *Id.* ¶ 22 (A-152).

## STATUTORY BACKGROUND

In 1990, Congress created Special Immigrant Juvenile Status to protect immigrant children in "long-term foster care" and provide them a pathway to permanent residence.  Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990).

The statute did not specify the age of eligibility for SIJS, but the Immigration and Naturalization Service (the predecessor agency to DHS) adopted

the definition of "child" in the Immigration and Nationality Act ("INA"), meaning "an unmarried person under twenty-one years of age." 8 U.S.C. § 1101(b)(1). Thus, the SIJS regulations, promulgated in 1993 and unchanged in all relevant respects since then, make SIJS available to children so defined. 58 Fed. Reg. 42843, 42850 (August 12, 1993) (codified at 8 C.F.R. § 204.11(c)).

Congress has amended the SIJS Statute three times since it was enacted, most recently in 2008, when SIJS eligibility was significantly expanded. The Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") removed the requirement that the child be eligible for foster care, replacing it with the more permissive requirement that a state juvenile court find that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008) (codified at 8 U.S.C. § 1101(a)(27)(J)(i)).[2]   In addition, consistent with the INA's definition of a "child," the TVPRA amendments provided age-out protections so that SIJS would not be denied on the basis of age so long as the juvenile was under 21 at the time of filing the petition (even if he or she turned 21 while the petition was pending). *Id.*, 122 Stat. at 5080 (codified at 8 U.S.C. § 1232(d)(6)).

Under the current SIJS Statute and regulations, a state "juvenile court" must make the following findings:

1.    The petitioner is under 21 years of age;

---

[2] The regulations have not been updated to reflect this change. *See* 8 C.F.R. § 204.11.

2.    The petitioner is unmarried;

3.    The petitioner is dependent on the court or to be placed in the custody of, or legally committed to, a state agency or individual appointed by the court;

4.    The petitioner cannot be reunified with one or both parents due to abuse, neglect, abandonment, or a similar basis found under state law; and

5.    It is not in the petitioner's best interest to be returned to his or her country of nationality or last habitual residence.

8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c)(1)–(2).

A SIJS grantee is eligible to become a lawful permanent resident without regard to how he or she arrived in the United States.  The bars to permanent residence based on unlawful entry, which apply to most other petitioners, are statutorily inapplicable to children granted SIJS.  8 U.S.C. § 1255(a), (h).

## ARGUMENT

The test for granting a preliminary injunction is well established.  The court first considers two essential prerequisites:  (1) the movant's likelihood of success on the merits, and (2) the likelihood that the movant will suffer irreparable harm if the injunction is denied.  If these two threshold showings are made, the court considers (3) whether denying an injunction would harm the plaintiffs more than a grant would harm the defendants, and (4) whether the public interest favors granting the injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008); *Ass'n of N.J. Rifle & Pistol Clubs v. Att'y Gen.*, 910 F.3d 106, 115 (3d Cir. 2018).

## I.     Plaintiffs Have a Likelihood of Success on the Merits.

A movant makes "a strong showing" of a likelihood of success "if there is 'a reasonable chance or probability, of winning.'"  *Ass'n of N.J. Rifle & Pistol Clubs*, 910 F.3d at 115 (quoting *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)). In this context, however, "'likelihood' does not mean more likely than not." *Singer Mgmt. Consultants v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011).

### A.     Standard of Review Under the APA

When reviewing agency action under the APA, the District Court functions as an appellate tribunal to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  5 U.S.C. § 706.  The "reviewing court" must "hold unlawful and set aside agency action, findings, and conclusions" that are

(A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)     contrary to constitutional right, power, privilege, or immunity;

(C)     in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

(D)     without observance of procedure required by law . . . .

*Id.* § 706(2).

Judicial review under this section is "narrow," and courts must not substitute their judgment for the agency's.  *Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  Nevertheless, courts will invalidate agency action "if the agency has relied on factors which Congress has not intended it to consider," among other reasons.  *Id.*; *see also CBS Corp. v. F.C.C.*, 663 F.3d 122,

137 (3d Cir. 2011).  Moreover, judicial deference is at its lowest point when the court considers questions of law such as whether the agency action conflicts with the controlling statute.  *Geisinger Cmty. Med. Ctr. v. Sec'y, U.S. Dep't of Health & Human Servs.*, 794 F.3d 383, 390–91 (3d Cir. 2015) ("While we usually afford deference to an agency's interpretation of a statute it is charged with administering, 'when we are called upon to resolve pure questions of law by statutory interpretation, we decide the issue de novo without deferring to [the] agency.'") (quoting *Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor,* 776 F.3d 157, 161 (3d Cir. 2015)).

## B. Defendants' Adoption and Enforcement of a New Eligibility Requirement for SIJS Is Final Agency Action and Therefore Subject to Judicial Review Under the APA.

Sometime in 2018, Defendants adopted a new eligibility requirement that made SIJS unavailable to juveniles who petitioned based on New Jersey Family Part orders issued between their 18th and 21st birthdays.  The adoption of this new requirement constituted final agency action subject to judicial review.

### 1. The eligibility requirement at issue is new.

Before mid-2018, USCIS routinely granted SIJS to juvenile petitioners who had obtained SIJ Findings from the Family Part after their 18th birthday ("18+ Family Part Orders").  After mid-2018, USCIS denied such petitions.  Declaration of Randi Mandelbaum ¶¶ 19–20 (Apr. 24, 2019) (survey of lawyers for immigrant children shows that USCIS granted SIJS petitions based on 18+ Family Part Orders before mid-February 2018 but denied them after early September 2018) (A-170);

Declaration of Maria Odom ¶ 16 (Apr. 18, 2019) (same) (A-181).  USCIS also now habitually delays the adjudication of such petitions beyond the statutory deadline. TVPRA, 8 U.S.C. § 1232(d)(2) (setting deadline of 180 days to adjudicate SIJS petitions); Mandelbaum Decl. ¶ 18 (85 SIJS petitions filed after January 1, 2017, based on 18+ Family Part Orders remained pending in late 2018, with 45 having been pending for more than 180 days) (A-169).  This about-face, resulting in the delay and denial of SIJS petitions filed by older youth, constitutes a change in agency policy.

The change followed a (now) well documented series of events.  At the end of 2016, USCIS consolidated SIJS adjudications, which had previously been made by individual field offices, in the USCIS National Benefits Center.  USCIS, *USCIS to Centralize Processing of Special Immigrant Juvenile Cases* (Nov. 1, 2016), https://www.uscis.gov/news/alerts/uscis-centralize-processing-special-immigrant-juvenile-cases.  Thereafter, the National Benefits Center requested guidance from the USCIS Office of Chief Counsel ("OCC") regarding state juvenile courts' authority to make SIJ Findings for juveniles between the ages of 18 and 21.

In February 2018, the OCC issued the requested guidance ("OCC Guidance") (A-38–39).  The OCC instructed that, "in order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have competent jurisdiction to determine both whether a parent could regain custody and to order reunification, if warranted."  *Id.* (A-38).  The OCC went on to state:

> Where a court loses the capacity to order reunification with a parent at age 18, they [sic] necessarily cannot make a juridical determination that reunification is not viable.  Accordingly, a state court order

-13-

finding that parental reunification is not viable will not be considered valid for the purpose of establishing SIJ eligibility if the evidence submitted by the petitioner does not establish the courts' jurisdiction under state law to place the child under the custody of the allegedly unfit parent.

*Id.* (A-39).

In the wake of the OCC Guidance, USCIS amended its Consolidated Handbook of Adjudication Procedures ("CHAP"), a non-public manual for USCIS personnel who adjudicate petitions. As of April 30, 2018, the CHAP included a long discourse, prepared by the OCC, in answer to this question: "Can you clarify USCIS's interpretation of reunification with one or both parents for purposes of establishing SIJ Classification, in particular where the petitioner is over 18 at the time the order is issued?" USCIS, CHAP, Vol. 6, Part D, *Petitions for Special Immigrant Juveniles (SIJs)* ch. 2.A.1 (April 30, 2018) (A-60). The crux of the answer is drawn nearly verbatim from the OCC Guidance: "[I]n order for a court order to be valid for the purpose of establishing SIJ eligibility, the court must have the power and authority to determine both whether a parent could regain custody and to order reunification, if warranted." *Id.* (A-60).

Relying on the OCC Guidance and the CHAP's reiteration of this Guidance, USCIS began to delay and deny SIJS petitions from New Jersey juveniles who filed based on 18+ Family Part Orders. This new policy and practice represented a sharp break with the past, as advocates for immigrant children had seen no such thing before 2018. Mandelbaum Decl. ¶ 24 (A-171); Odom Decl. ¶ 17 (A-181). As the New York court held, "The agency's fundamental reversal in its practices

-14-

undermines any assertion that it did not change its policies." *R.F.M.*, 2019 WL 1219425, at *16.

> ### 2.   USCIS's adoption of the new policy constitutes final agency action, reviewable by this Court.

An agency action is final and reviewable if two conditions are met. "First, the action must mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Second, the action must determine legal "rights or obligations" or result in "legal consequences." *Id.* at 178. Thus, the "core question[s]" are whether the agency has "completed its decisionmaking process" and whether its decision will "directly affect the parties." *Franklin v. Mass.*, 505 U.S. 788, 797 (1992); *see also Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011).

USCIS's new policy satisfies this test. There is nothing "tentative" or "interlocutory" about it. *Bennett*, 520 U.S. at 178. USCIS requested guidance from the OCC; held the SIJS petitions of juveniles in this age group while awaiting the guidance; after receiving the guidance, incorporated it into the CHAP; and then consistently relied on it to delay and deny the SIJS petitions of older juveniles in New Jersey. Compl. ¶¶ 38–48. As the Southern District of New York concluded: "It was only after the February 2018 Legal Guidance was issued that the agency began adjudicating these [SIJS] cases [for older youth] again, and it did so in accordance with the February 2018 guidance." *R.F.M.*, 2019 WL 1219425, at *16. Thus, "USCIS's revision of the CHAP and its implementation of its new policy

marks the 'consummation of the agency's decision-making process.'" *J.L.*, 341 F. Supp. 3d at 1067 (quoting *Bennett*, 520 U.S. at 178).

Both the California and New York courts rejected the government's argument that USCIS's actions were final only as to those juveniles whose SIJS petitions had already been denied. These cases do not challenge the particular outcome for any individual juvenile, but instead challenge "USCIS's adoption of a dubious legal theory to justify a blanket policy of denying SIJ petitions for immigrant juveniles between the ages of 18-20." *Id.* at 1066. USCIS's adoption and implementation of that "blanket policy" constitutes final agency action without regard to whether any individual juvenile has yet been denied SIJS.

The second prong of the *Bennett* test is also met. USCIS relies on the new policy to delay and deny the SIJS petitions of Plaintiffs and others in their position. This is a "legal consequence" of immense importance, as the denial of SIJS will subject Plaintiffs and members of the Proposed Class to the immediate risk of deportation and separation from the custodians in whose care the Family Part has placed them. As the California court put it, "USCIS's new policy has 'a virtually determinative effect' on Plaintiffs' SIJS petitions." *J.L.*, 341 F. Supp. at 1068 (quoting *Bennett*, 520 U.S. at 169).

Because the policy represents the culmination of USCIS's decision-making process and disqualifies older juveniles from SIJS eligibility, USCIS's adoption and implementation of the policy constitutes final agency action. This Court therefore has jurisdiction to review the policy under the APA.

**C.   Defendants Violate the APA by Imposing a New Eligibility Requirement for SIJS That Contravenes Federal Law.**

USCIS's policy of rejecting 18+ Family Part Orders on jurisdictional grounds violates the SIJS Statute and disregards Congress's directive that the agency must defer to state courts on questions of state law.  Because USCIS's policy "is not in accordance with law" it must be enjoined.  5 U.S.C. § 706(2)(A).

**1.   Defendants' new eligibility requirement is in excess of, and in conflict with, the criteria established by the SIJS Statute and associated regulations.**

USCIS exceeds its authority under the SIJS Statute by requiring petitioners to prove that the state court had the power to reunify them with their parents.  To justify this new prerequisite, USCIS relies on outdated SIJS regulations requiring "the court to have competent jurisdiction over dependency and long-term foster care decisions."  OCC Guidance at 1 (A-38).  But the TVPRA deleted all references to long-term foster care from the SIJS Statute, which now qualifies any child who cannot be safely reunified with "1 or both parents."  Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008) (codified at 8 U.S.C. § 1101(a)(27)(J)(i)).  "USCIS's reliance on the SIJ regulation's definition of 'eligible for long-term foster care' holds no weight when Congress explicitly disapproved of that language."  *J.L.*, 341 F. Supp. 3d at 1059.[3]

---

[3] While relying on the now defunct foster care provision of the regulations, Defendants' position actually undermines the original intention of the SIJS Statute with regard to children in long-term foster care.  One reason a child may be "deemed eligible for long-term foster care" is that both of the child's parents are deceased.  *See* 8 C.F.R. § 204.11(a) (defining "eligible for long-term foster care" to mean that a juvenile court has found that "family reunification is no longer a viable option.").  Nothing in the TVPRA or other amendments to the SIJS Statute

As other courts tasked with reviewing USCIS's new requirement have found, "[t]he plain text of the implementing regulation imposes no substantive requirements before a state court is permitted to make SIJ findings." *J.L.*, 341 F. Supp. 3d at 1059. Neither does the SIJS Statute "outline what types of 'judicial determinations regarding the custody and care of juveniles' a state court must be empowered to make before it has jurisdiction under the SIJ statute. Rather, it simply states that the court must have 'jurisdiction under State law' to do so." *Id.* (quoting 8 C.F.R. § 204.11(a)) (internal citation omitted). Thus, USCIS's "position—that in order to make the factual finding that 'reunification with 1 or both of the immigrant's parents is not viable,' the Family Court must also have the authority to order reunification with the allegedly unfit parent—is contrary to the SIJ statute." *R.F.M.*, 2019 WL 1219425, at *19 (quoting 8 U.S.C. § 1101(a)(27)(J)(i)) (internal citation omitted).

---

suggests an intent by Congress to deprive orphans of the Statute's protections. *See* Mem. from Michael Aytes, Acting Assoc. Dir., Domestic Ops., USCIS, to Regional Directors, et al., at 82 (Sept. 12, 2006) ("[A] juvenile who becomes eligible for long term foster care due to the death of his/her parents might be considered by a court to have suffered abandonment [under state law]."), https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/Static_Files_M emoranda/Archives%201998-2008/2006/afm_ch22_091206r.pdf. Yet a juvenile court will necessarily lack the power to order the reunification of an orphan with a deceased parent. Thus, the OCC Guidance, and USCIS's adoption of it, directly conflicts with the original and ongoing intent of the SIJS Statute to ensure a pathway to legal status for immigrant children in the United States whom a juvenile court deems abandoned (or something similar) under state law because their parents are dead.

So too, USCIS's reliance on this new requirement to target older SIJS petitioners is inconsistent with federal law regarding the applicable age limits. Under the INA, a "child" is defined as "an unmarried person under twenty-one years of age."  8 U.S.C. § 1101(b)(1).  Congress included age-out protections for SIJS applicants, prohibiting USCIS from denying a petition "based on age if the alien was a child [*i.e.*, under 21] on the date on which the alien applied for such status." 8 U.S.C. § 1232(d)(6).

Mirroring the INA definition, the SIJS regulations provide that a petitioner is considered a "juvenile" if he or she is "unmarried" and "under twenty-one years of age."  8 C.F.R. § 204.11(c)(1)–(2).  This regulation "explicitly contemplates the possibility that the SIJS Statute may apply to individuals past a state's age of majority."  *J.L.*, 341 F. Supp. 3d at 1060.  Indeed, in promulgating the final regulation, the agency amended its initial interim regulation, which had made a petitioner eligible if he or she was "a juvenile under the law of the state."  56 Fed. Reg. 23207, 23208 (May 21, 1991).  Commenters objected to this language, pointing out that "definitions of the terms 'juvenile,' 'minor,' and 'child' vary from state to state."  58 Fed. Reg. 42843, 42846 (Aug. 12, 1993).  The agency responded by setting the cut-off at 21:

> [I]n order to minimize confusion caused by dissimilar state laws, the Service has removed the requirement that the beneficiary be a juvenile under state law and replaced it with a requirement the beneficiary be under twenty-one years of age.  The new requirement establishes a consistent countrywide definition of the age at which an alien will no longer be eligible for special immigrant juvenile status.

*Id.*  The agency explained further: "The revised standard allows students and other young persons who continue to be dependent upon the juvenile court after reaching the age of eighteen to qualify for special immigrant juvenile status."  *Id.*

Thus, under the controlling law, a juvenile qualifies for SIJS until the age of 21 so long as the juvenile court has "jurisdiction under State law" to make the requisite findings.  8 C.F.R. § 204.11(a).  Insofar as USCIS's delay and denial of the SIJS petitions of older juveniles rests on Defendants' view that the New Jersey Family Part lacks jurisdiction under state law, Defendants are wrong.

### 2.     Defendants have failed to defer to state court decisions on questions of state law, as required by the SIJS Statute.

USCIS's policy of denying SIJS to older juveniles fails to defer to the Family Part's findings as mandated by the SIJS Statute.  The SIJS Statute reserves for the juvenile court the duty to make the required custody, dependency, or legal commitment determination; to find that the child cannot reunify with one or both parents due to abuse, neglect, abandonment, or a similar basis under state law; and to make the best-interest determination.  8 U.S.C. § 1101(a)(27)(J)(i)–(ii); *see also H.S.P. v. J.K.*, 223 N.J. 196, 200–01, 208–13 (2015).  The SIJS regulations similarly direct juvenile courts "having jurisdiction under State law" to make SIJS findings and instruct these courts to make dependency determinations "in accordance with state law."  8 C.F.R. § 204.11(a), (c)(3).  USCIS's own guidance materials are in accord, stating that "[g]enerally, a petition should not be denied based on USCIS' interpretation of state law, but rather officers should defer to the juvenile court's interpretation of the relevant state laws."  CHAP, Vol. 6, Part D,

ch. 2.B.1 (A-65). And "[t]here is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law. Juvenile courts should follow their state laws on issues such as when to exercise their authority, evidentiary standards, and due process." USCIS Policy Manual, Vol. 6, Part J, ch. 3.A.2 (last updated Apr. 19, 2019) (A-22). Thus, in keeping with principles of federalism, immigration officials are required to defer to state courts on matters of state law.

Under the SIJS regulations, USCIS owes deference in particular to a "juvenile court," defined as one having "jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). The New Jersey Family Part is such a court. The state constitution creates the Family Part, N.J. Const. art. VI, § 3, ¶ 3, and the New Jersey Supreme Court has exercised its authority under this article to vest in the Family Part jurisdiction to hear "[a]ll actions in which the principal claim is unique to and arises out of a family or family-type relationship," N.J. Ct. R. 5:1-2.[4] New Jersey statutes confirm the jurisdiction of the Superior Court in all family law matters. *See generally* N.J. Stat. Ann. §§ 9:1-1 to 9:3A-7.4, 2A:4A-23 to -48, 30:4C-1.1 to -92. Moreover, the New Jersey Appellate Division has explicitly held that, for the

---

[4] Family Part cases include, among others, those to determine the custody of a child, *see generally* N.J. Ct. R. 5:8; establish kinship legal guardianship, *see generally* N.J. Ct. R. 5:9A; order an adoption, *see generally* N.J. Ct. R. 5:10; place a child with the New Jersey Division of Child Protection and Permanency, *see generally* N.J. Ct. R. 5:12; and adjudicate juvenile delinquency, *see generally* N.J. Ct. Rs. 5:19 to 5:25.

purpose of SIJ Findings, the Family Part "always" has "jurisdiction under state law to make judicial determinations about the custody and care of juveniles" in accordance with 8 C.F.R. § 204.11(a). *A.E.C. v. P.S.C.*, 453 N.J. Super. 19, 30 (App. Div. 2018).

In *A.E.C.*, the Appellate Division also resolved the question of whether the Family Part may exercise jurisdiction over older juveniles: the answer is yes. 453 N.J. Super. at 29. The court relied primarily on a New Jersey statute that sets the age of majority in general at 18, but *not* "with respect to the right of a court to take any action it deems appropriate and in the interest of a person under 21 years of age." N.J. Stat. Ann. § 9:17B-3; *see also O.Y.P.C. v. J.C.P.*, 442 N.J. Super. 635, 642–43 (App. Div. 2015) (outlining statutory bases for Family Part jurisdiction over 18-21-year-olds). Pursuant to this statutory exception, the *A.E.C.* court held that "the Family Part has jurisdiction to grant a parent custody of an unemancipated child who is over eighteen, but under twenty-one, and to issue a declaratory ruling that the child is dependent on the parent and is not emancipated." 453 N.J. Super. at 21. The court noted "ample precedent for declaring children over the age of eighteen to be unemancipated when they are still completing their education, are economically dependent on their parents, and remain within the parental 'sphere of influence and responsibility.'" *Id.* at 28–29 (quoting *Filippone v. Lee*, 304 N.J. Super. 301, 308 (App. Div. 1997), and citing cases). Furthermore, in a case involving the care or custody of a juvenile between the ages of 18 and 21, "either a declaration of unemancipation or a custody order

would justify the court in noting, for purposes of a SIJ finding, that the child is 'dependent' on the court." *Id.* at 29 (citing 8 C.F.R. § 204.11(c)).[5]

Beyond its unfounded general objection to the Family Part's exercise of jurisdiction over older juveniles, USCIS has also attempted to cast doubt on the validity, for SIJS purposes, of any Family Part order entered on the consent of a juvenile between the ages of 18 and 21.  For example, in affirming the denial of a recent SIJS application filed by a juvenile who was 20 when the New Jersey Family Part ordered him into his older brother's custody, the USCIS Administrative Appeals Office reasoned that "a custody determination by the Petitioner's consent does not show that the family court could have ordered the Petitioner's reunification with his parents had the family court found that to be the

---

[5] The Third Circuit's seemingly contrary decision in *M.B. v. Quarantillo*, 301 F.3d 109 (3d Cir. 2002), has been vitiated by subsequent statutory amendments and New Jersey court decisions.  In *Quarantillo*, the Third Circuit held that the INS district director had not abused his discretion under the APA by relying in part on a purported "jurisdictional limit of 18 years of age" under New Jersey law to deny consent for a 19-year-old to seek SIJ Findings from a juvenile court.  *Id.* at 116. The consent provisions then in effect under the SIJS Statute gave the INS significantly greater discretion than the current law allows.  *See* Mem. from Donald Neufeld, Acting Assoc. Dir., Domestic Ops., USCIS, to Field Leadership 3–4 (March 24, 2009) (explaining how the TVPRA narrowed the consent provisions) (A-4–5).  What is more, the New Jersey courts have now expressly affirmed their jurisdiction to make SIJ Findings for unemancipated 18-21-year-olds.  *A.E.C.*, 453 N.J. Super. at 29.  On this question of state law, the state courts control.  *Brady v. Maryland*, 373 U.S. 83, 90 (1963) ("We usually walk on treacherous ground when we explore state law, for state courts, state agencies, and state legislatures are its final expositors under our federal regime.").  For these same reasons, the Third Circuit's deference to the INS in *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 224–25 (3d Cir. 2003), has little bearing in this case.

-23-

appropriate remedy." *In re J-A-M-R-*, 2018 WL 6617332 (USCIS Admin. Appeals Office Nov. 28, 2018).

This objection to orders entered on a juvenile's consent fares no better than USCIS's other challenges to the Family Part's authority.  It is true that New Jersey law requires or at least recommends the consent of older juveniles to certain custodial placements.  *E.g.*, N.J. Stat. Ann. § 9:6-8.54(c) (requiring juvenile's consent to continue a foster placement beyond the juvenile's 18th birthday); *A.E.C.*, 453 N.J. at 29 (authorizing the state courts to place an older juvenile in a parent's custody when "both the child and the parent consent" but relying on best-interest findings alone to order older juvenile into parent's custody).  But nothing in the SIJS Statute invalidates or casts doubt on a custody order entered with the consent of the juvenile where state law requires such consent.  *J.L. v. Cissna*, 341 F. Supp. 3d at 1061 ("USCIS points to no state or federal authority to support the proposition that a court lacks jurisdiction solely because its power to exercise authority is conditioned on a party's consent."); *R.F.M. v. Nielsen*, 2019 WL 1219425, *20 (recognizing the validity of New York guardianship orders entered on consent of the juvenile).  Thus, Defendants have no more basis in federal law to disregard state court orders entered on the juvenile's consent than to disregard state court orders entered on behalf of 18-21-year-olds in general.

### D.    Defendants Violate the APA by Imposing a New Eligibility Requirement for SIJS Without the Process the Statute Requires.

Agency action must be invalidated if it occurs "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).  Here, USCIS failed to comply

with the APA's procedural requirements in three distinct ways.  First, USCIS did not provide a reasoned explanation for its new policy.  Second, it did not engage in the notice-and-comment period required for the adoption of substantive rules under 5 U.S.C. § 553.  Third, even if the new policy is not a substantive rule, USCIS failed to publish the policy in the Federal Register as required by 5 U.S.C. § 552.  Each procedural defect invalidates the policy.

### 1.    Defendants failed to offer a reasoned explanation for their departure from established practice.

"[T]he requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009*).*  Thus, an agency may not "depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."  *Id.*  Failure to acknowledge and provide a reasoned explanation for the policy change will render the agency's action arbitrary and capricious under the APA.  *CBS Corp. v. F.C.C.*, 663 F.3d at 138; *see also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (stating that an "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice" (internal quotation marks omitted)).  Moreover, when explaining a policy change, the "agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account."  *Encino Motorcars*, 136 S. Ct. at 2126 (internal quotation marks omitted).  In those cases, "a reasoned explanation is needed for disregarding facts and circumstances that

underlay or were engendered by the prior policy." *Fox Television Stations*, 556 U.S. at 515–16.

Here, USCIS's new policy represents a change requiring a "reasoned explanation." There is no dispute that before mid-2018, USCIS routinely granted SIJS to juveniles who filed based on 18+ Family Part Orders. Then, without a reasoned explanation, and without any relevant change in federal law, USCIS reversed course such that it now delays and denies such petitions, Mandelbaum Decl. ¶¶ 18, 20, 25 (A-169–71); Odom Decl. ¶ 14, 16 (A-181), while continuing to grant the petitions of younger juveniles based on essentially identical factual predicates, W.A.O. Decl. ¶ 29 (younger siblings, whose experiences mirrored his, granted SIJS) (A-98). USCIS's failure to acknowledge this policy change—much less provide a reasoned explanation for it—renders its action arbitrary and capricious in violation of the APA. *J.L.*, 341 F. Supp. 3d at 1063–64 ("Issuing guidance where none had existed for nearly a decade constitutes a change that requires a reasoned explanation, particularly when that guidance has resulted in drastically different outcomes in similar cases."); *see also Fox Television Stations*, 556 U.S. at 515.

> ### 2.   Defendants adopted and enforced the new eligibility requirement without notice-and-comment rulemaking.

The APA requires that a federal agency follow prescribed notice-and-comment procedures before adopting a substantive rule. 5 U.S.C. § 553. As part of the rule-making process, the agency must provide (1) notice to the public, (2) an opportunity for interested persons to participate in the rule-making, and (3) a

concise general statement of the rule's basis and purpose.  5 U.S.C. § 553(b)–(c).
These requirements apply "only to so-called 'legislative' or 'substantive' rules."
*Lincoln v. Vigil*, 508 U.S. 182, 196 (1993); *see also* 5 U.S.C. § 553(b)(A).

Whether an agency action triggers the notice-and-comment requirement is
"determined not by reference to the label given the action by the agency, but rather
by the substance of the action itself and its practical effects on affected parties."
*City of Jersey City v. Pierce*, 669 F. Supp. 103, 108 (D.N.J. 1987); *see also Cerro
Metal Prods. v. Marshall*, 620 F.2d 964, 981 (3d Cir. 1980) ("[T]he function of the
court is to decide what a rule 'really' does and then require a rule substantially
affecting a legal right to be promulgated by notice-and-comment rulemaking or
else be held invalid").  A substantive rule "has the force of law."  *Pierce*, 669 F.
Supp. at 108.  In subsequent administrative proceedings under such a rule, "the
issues are whether the adjudicated facts conform to the rule and whether the rule
should be waived or applied in that particular instance."  *Id.*  When an agency
action deprives decision-makers of the "flexibility to handle agency matters on a
case-by-case basis," the action "may properly be viewed as [a] substantive rule[]
subject to invalidation for noncompliance with the requirements of the APA."  *Id.*

Here, USCIS's new policy is a substantive rule that required it to abide by
the APA's notice-and-comment procedures.  The policy "'narrowly limits agency
discretion' and . . . 'effectively replaced agency discretion with a new binding rule
of substantial law.'"  *R.F.M.*, 2019 WL 1219425, at *21 (quoting *J.L.*, 341 F. Supp.
3d at 1065).  USCIS's lack of discretion is evidenced by its cookie-cutter denials of
SIJS applications based on 18+ Family Part Orders ever since it implemented its

new policy.  *See, e.g.*, W.A.O. Decl. Ex. B (A-107–08); H.H.M.C. Decl. Ex. B (A-124–25) (denying Plaintiffs' SIJS applications under nearly identical articulations of the governing policy).  USCIS's failure to comply with the notice-and-comment requirement invalidates its new substantive rule.

### 3.   Defendants failed to provide timely or adequate notice of the change in policy.

Even if the Court determines that USCIS's new policy is not a "substantive rule," USCIS nonetheless violated the APA by failing to publish it in the Federal Register.  An agency's "statements of general policy or interpretations of general applicability" must be published in the Federal Register.  5 U.S.C. § 552(a)(1)(D).  A policy or interpretation is of "general applicability" if it results in a "significant impact upon any segment of the public."  *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir. 1983), *cited with approval in Kahn v. United States*, 753 F.2d 1208, 1222 (3d Cir. 1985).

Here, USCIS's policy significantly affects a segment of the public.  Under this policy, USCIS has delayed and denied scores of SIJS applications submitted by juveniles who relied on 18+ Family Part Orders.  Mandelbaum Decl. ¶¶ 18, 20, 25 (A-169–71); Odom Decl. ¶¶ 14, 16 (A-181).  The impact on this segment of the public requires USCIS to have published its new policy in the Federal Register. *See Morton v. Ruiz*, 415 U.S. 199, 233–36 (1974) (requiring publication when new policy, which was contained only in agency's internal affairs manual, disqualified Native Americans otherwise within class of beneficiaries of general assistance program); *Neighborhood Legal Servs., Inc. v. Legal Servs. Corp.*, 466 F. Supp.

1148, 1155 (D. Conn. 1979) (requiring publication when agency denied funding to legal services organization because there were too few "migrant workers" in its service area, but had not previously published numerical requirement or definition of "migrant worker").

In this case, USCIS not only failed to publish the policy in the Federal Register; it failed to announce the policy publicly at all.  The agency released neither the OCC Guidance nor the CHAP, and press statements related to the new policy were inconsistent.[6]  Lawyers in New Jersey surmised the existence of a new policy from long delays in the adjudication of their older SIJS clients' applications, followed by a spate of Requests for Evidence (RFEs) and Notices of Intent to Deny (NOIDs) that signaled the policy.  Mandelbaum Decl. ¶¶ 14–16 (A-167–68). These RFEs and NOIDs demanded proofs that "the state court had jurisdiction under the state law to make a legal conclusion about returning you to your parent(s)' custody" or that "the court order you submitted was issued by a juvenile court with jurisdiction over your care and custody as a juvenile under the state law of New Jersey."  *Id.* ¶ 15 (A-168).  USCIS's failure to provide any official notice of the change dooms the new policy under the APA.  5 U.S.C. §§ 552(a)(1)(D), 706(2)(D).

---

[6] *Compare* Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. Times, April 18, 2018 (quoting USCIS spokesperson Jonathan Withington denying any change in policy) (A-44) *with* Statement of USCIS Spokesperson Jonathan Withington (April 24, 2018), appended to Ted Hesson, *USCIS Explains Juvenile Visa Denials,* Politico, Apr. 25, 2018 (explaining change in policy) (A-57).

**E.    Defendants Violate the APA by Imposing a New Eligibility Requirement for SIJS that Deprives Plaintiffs and Class Members of this Relief Without Due Process of Law.**

The APA requires that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

Immigrants who are physically present and who have developed substantial connections to this country are protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).  In *Osorio-Martinez v. Attorney General*, the Third Circuit held that SIJS grantees are among those immigrants whose substantial connections to this country allow them to invoke the Due Process Clause.  893 F.3d 153, 168 (3d Cir. 2018).  The court reasoned that "these children have satisfied rigorous eligibility criteria for SIJ status, denoting them as wards of the state with obvious implications for their relationship to the United States" and that "Congress accorded these children a range of statutory and procedural protections that establish a substantial legal relationship with the United States." *Id.* (citations omitted).

Although Plaintiffs and members of the Proposed Class are SIJS applicants rather than grantees, they share with the *Osorio-Martinez* plaintiffs the kinds of connections to the United States that entitle them to claim constitutional protection. They have lived in this country for years, pursuing their education and building or reestablishing family ties. *E.g.*, W.A.O. Decl. ¶¶ 23–26 (discussing reunification with mother and siblings in Elizabeth, high school graduation, employment, and plans for further schooling) (A-96–97); N.L.J. Decl. ¶¶ 28–31 (describing home

-30-

with older sister and her family in New Brunswick, high school graduation, and employment) (A-132).  Class members have appeared in the Family Part to seek protection, and that court has placed them with caretakers in this State; found that reunification with one or both of their parents is not viable because of abuse, neglect, or abandonment; and concluded that it is not in their best interest to return to their countries of origin.[7]  *E.g.*, W.A.O. Decl. Ex. A (A-102–04); H.H.M.C. Decl. Ex. A (A-120–21); N.L.J. Decl. Ex. A (A-137–39); K.M.R.L. Decl. Ex. A (A-154–55).

Plaintiffs have applied to USCIS for SIJS and faced delays and threatened or actual denials, not because they fail to meet Congress's criteria for SIJS, but because of the new and invalid eligibility requirement USCIS has imposed.  But for this barrier, Plaintiffs and the class they represent would qualify for SIJS, gaining the "host of legal rights and protections" it offers.  *Osorio-Martinez*, 893 F.3d at 161 n.7.  These benefits include mandatory and discretionary exemptions from otherwise applicable grounds of inadmissibility and an opportunity to obtain lawful permanent residency.  8 U.S.C. § 1255(a), (h).  Both the statutory requirements for eligibility and the benefits that flow from SIJS "attest to SIJ

---

[7] Indeed, the Family Part's acceptance of jurisdiction in a child custody case itself demonstrates a SIJS applicant's strong ties to the State.  The Family Part may assert jurisdiction only if (among other factors) New Jersey "is the home state of the child" or was so "within six months before the commencement of the proceeding"; the child and at least one parent "have a significant connection with this State other than mere physical presence"; and "substantial evidence is available in this State concerning the child's care, protection, training and personal relationships."  N.J. Stat. Ann. § 2A:34-65(a)(1), (2).

designees' dependency and close ties with state and federal authorities . . . and a relationship to the United States that far exceeds that of aliens 'on the threshold of initial entry' or 'apprehended within hours of surreptitiously entering the United States.'" *Osorio-Martinez*, 893 F.3d at 170 (citation omitted).

Due process protections attach to the statutory rights Congress has accorded to SIJS-eligible youth. *Osorio-Martinez*, 893 F.3d at 172; *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc). Plaintiffs and members of the Proposed Class have a constitutionally protected interest in the fair and lawful consideration of their petitions for SIJS. *Osorio-Martinez*, 893 F.3d at 172; *Yeboah*, 345 F.3d at 223. Yet Defendants have failed to adjudicate Plaintiffs' and class members' applications in accordance with the law. Instead, Defendants have concocted and then imposed a policy of disqualifying them from SIJS. Plaintiffs and class members had no notice of this policy and no opportunity to object to it. They have therefore been deprived of the most basic elements of due process, in violation of the APA. *Dia*, 353 F.3d at 239 ("[W]e look to see if the process at issue fits with the notion that '[t]he *fundamental requirement of due process* is the opportunity to be heard at a meaningful time and in a meaningful manner.'") (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

## II.   Plaintiffs and Class Members Face Immediate, Irreparable Harm.

To show irreparable harm, a movant must prove an imminent threat of serious harm. *Campbell Soup Co. v. Conagra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). The "potential harm" must be such that it "cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only*

way of protecting the plaintiff from harm." *Id.* at 92 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)).

Plaintiffs will face immediate irreparable harm that cannot be mitigated by monetary damages if the Court denies the injunction. In *Osorio-Martinez*, the Third Circuit held that SIJS grantees would face irreparable harm if they were subject to expedited removal. 893 F.3d at 179. This holding rested on the findings of the juvenile court "that reunification with one or more of the child's parents was not viable due to abuse, neglect, or abandonment, and that it would not be in the child's best interest to be returned to his or her country of origin." *Id.* The Family Part has made these same findings as to each Plaintiff and class member.

The *Osorio-Martinez* court also found irreparable harm because removal would nullify petitioners' pending applications for adjustment of status. *Id.* at 172, 179. Plaintiffs here also face an immediate threat of removal and concomitant loss of the opportunity to become lawful permanent residents. W.A.O. Decl. ¶ 31 (A-99); H.H.M.C. Decl. ¶ 25 (A-117); N.L.J. Decl. ¶ 36 (A-134); K.M.R.L. Decl. ¶ 18 (A-151). As this Court has recognized, deportation in derogation of the law is "the ultimate irreparable harm." *De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 409 (D.N.J. 2018); *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (recognizing "that deportation is a particularly severe 'penalty'") (citation omitted).[8]

---

[8] Even those class members not yet in removal proceedings face an imminent risk of deportation under the government's recently adopted policy of filing removal proceedings against undocumented immigrants whose petitions for immigration relief, including SIJS petitions, are denied. USCIS, *Policy Memorandum: Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens*, Point V, at 7 (June 28, 2018)

For some Plaintiffs and class members, the already severe harm of deportation is aggravated by the grave dangers they face in their countries of origin. *See Cruz-Gonzalez ex rel. D.M.S.C. v. Kelly*, No. CV 16-5727, 2017 WL 3390234, at *6 (E.D. Pa. Aug. 7, 2017) (finding irreparable harm to mother and daughter if they were forced to return to El Salvador to face renewed gang violence). Plaintiffs W.A.O., H.H.M.C., and N.L.J. suffered threats, harassment, and assaults by gang members before they fled their home countries. W.A.O. Decl. ¶¶ 14–22, 32–33 (A-94–96, A-99); H.H.M.C. Decl. ¶¶ 13–15, 26 (A-113–14, A-117); N.L.J. Decl. ¶¶ 19–26 (A-131–32). Returning them to face renewed violence would cause them irreparable harm.

The forced separation of a family also constitutes irreparable harm. *Ms. L. v. U.S. Immigration & Customs Enf't*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017)). Evidence presented in *Ms. L* demonstrated that "[s]eparation from family leaves children more vulnerable to exploitation and abuse, no matter what the care setting." *Id.* at 1147; *see also J.S.R. ex rel. J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 742–43 (D. Conn. 2018) (plaintiffs suffered irreparable harm from family separation, including depression and PTSD). Plaintiffs, who are already vulnerable based on their troubled family histories, fear losing the connections they have formed with their custodians in New Jersey. K.M.R.L. Decl. ¶ 19 ("I do not want to lose the support I have from

---

(A-78); *see also J.L.*, 341 F. Supp. 3d at 1069 (concluding that for SIJS applicants not already in proceedings, "removal is at least likely to occur").

the loving home [my older brother] has provided.") (A-151); W.A.O. Decl. ¶ 34 ("I cannot imagine what life would be like if I were ripped away from [my mother's] care.") (A-100); H.H.M.C. Decl. ¶ 28 ("My mother and stepfather provide me the support I need and take care of me.  I can't stand the idea that I could be separated from my family again.") (A-117); N.L.J. Decl. ¶ 40 ("I do not want to leave my sister and her husband.  They care for me and protect me in ways my parents never did.") (A-134).  If the preliminary injunction is not granted, these juveniles will be unable to remain with the court-appointed custodians who provide them healthy and loving homes.  Their Family Part orders establish that they have no fit parent to care for them in their home countries.  *E.g.*, N.L.J. Decl. ¶¶ 33, 37, & Ex. A (A-132, A-134, A-137); K.M.R.L. Decl. ¶¶ 15, 20, & Ex. A (A-150, A-152, A-154).

Even short of the severe harms of deportation and family separation, Plaintiffs and class members face irreparable harm.  As the Third Circuit held in *Osorio-Martinez*, SIJS itself confers a host of immigration and other benefits. 893 F.3d at 161 n.7, 163, 171.  "The loss of these benefits by itself constitutes irreparable harm."  *J.L.*, 341 F. Supp. 3d at 1068.

One such benefit is access to health care.[9]  Deprived of health care coverage by Defendants' denial of their SIJS petitions, class members generally cannot

---

[9] New Jersey has opted into CHIP and Medicaid coverage for "lawfully present" immigrant youth up to age 19 and 21, respectively.  Centers for Medicare & Medicaid Servs., *Medicaid and CHIP Coverage of Lawfully Residing Children and Pregnant Women*, https://www.medicaid.gov/medicaid/outreach-and-enrollment/ lawfully-residing/index.html.  A juvenile with SIJS or one whose SIJS application is pending counts as "lawfully present."  Letter from Centers for Medicare & Medicaid Servs. to State Health Officials 3 (July 1, 2010),

obtain medically necessary services, including mental health services to address the trauma of parental abuse or neglect, often compounded by prolonged exposure to gang violence.  Declaration of Douglas Bishop, M.D. ¶¶ 7–18 (Apr. 9, 2019) (A-187–94); W.A.O. Decl. ¶ 36 (A-100).  The resulting damage to Plaintiffs' and class members' health constitutes irreparable harm.  *Riley v. Brown*, No. 06-00331, 2006 WL 842437, at *10 (D.N.J. Mar. 29, 2006) ("Courts have frequently found that an injunction is the appropriate remedy where a plaintiff's health or well-being is threatened.")

Further, the delay and denial of SIJS severely curtails Plaintiffs' and class members' opportunities for educational achievement and professional growth. Many cannot afford to go to college.[10]  Instead, they find work in the "distinct 'unauthorized labor market.'"  Declaration of Judith Meltzer ¶ 11 (Apr. 18, 2019) (A-205–06).  In this market, workers are concentrated in low-wage sectors, underpaid even within those sectors, and frequently employed only for short periods.  *Id.* ¶¶ 11–14 (A-205–08).  Plaintiffs' experiences illustrate this problem. N.L.J. works as a painter, but he wants to study to become a math teacher or

---

https://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/SHO 10006.pdf.

[10] A new law in New Jersey extends state financial aid to undocumented college students who attended a local high school for at least three years.  N.J. Higher Educ. Student Assistance Auth., *Fin. Aid Resources for New Jersey Dreamers*, https://www.hesaa.org/Pages/NJAlternativeApplication.aspx.  But such aid has been available for only a few months, and juveniles who arrive in the U.S. in their late teens may not attend N.J. high schools long enough to qualify.  *Id.*; *see also* N.J. Higher Educ. Student Assistance Auth., *Frequently Asked Questions for New Jersey Dreamers*, https://www.hesaa.org/Documents/NJAltAPPQnA.pdf.

accountant, options closed to him unless he gains legal status.  N.L.J. Decl. ¶¶ 31, 41 (A-132, A-134).  H.H.M.C. left high school to take a construction job to help support his family, but he dreams of learning to work with airplanes.  H.H.M.C. Decl. ¶¶ 19–20 (A-115).  As the court in *J.L.* concluded, "[w]ithout green cards, Plaintiffs' professional opportunities are not just limited, they are virtually eliminated," causing irreparable harm.  341 F. Supp. 3d at 1069.

## III.   The Balance of Equities and the Public Interest Favor Plaintiffs.

When the government is the opposing party, consideration of the balance of equities and the public interest merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Osorio-Martinez*, 893 F.3d at 178.  In *Nken*, the Supreme Court weighed the "public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm" against the "public interest in prompt execution of removal orders."  556 U.S. at 436.  Here, that balance favors Plaintiffs and members of the Proposed Class.  They would qualify for SIJS but for Defendants' unlawful imposition of a new eligibility requirement, and a grant of SIJS would qualify them to apply for lawful permanent residency once visas become available.  8 U.S.C. § 1255(a), (h).  They are not presently subject to removal orders, as was the petitioner in *Nken*, reducing the government's interest in immediate immigration enforcement against them.  A preliminary injunction would protect the public interest in the appropriate interpretation and implementation of the SIJS Statute, which Congress passed to protect juveniles like Plaintiffs from the harm of deportation to countries where they lack fit caretakers and would therefore face both deprivation and violence alone.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily enjoin Defendants from enforcing their new eligibility requirement for SIJS against applicants who were 18-21 years old when they obtained juvenile court orders.


April 29, 2019

s/ Catherine Weiss

Catherine Weiss
Natalie J. Kraner
Craig Dashiell
Eric R. Suggs
Tracy Buffer
Claudia Lorenzo
LOWENSTEIN SANDLER
Pro Bono Counsel to Plaintiffs
    and Proposed Class